**PROJECT ENGINEERING USA CORPORATION, a/k/a Project Engineering Co., Inc. and Les Goetting, Appellants,**

v.

**GATOR HAWK, INC., Appellee.**

No. 01–90–01140–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 9, 1992.

Mary E. Slay, Houston, for appellant.

Patrick L. Hughes, Melvin L. Smith, Houston, for appellee.

Before MIRABAL, DUGGAN and WILSON, JJ.

## OPINION

MIRABAL, Justice.

This is an appeal from a judgment, after a bench trial, in a suit for wrongful conversion of oil field testing units. We affirm.

Gator Hawk, Inc. (Gator Hawk), a Texas corporation, sued appellant Project Engineering USA Corporation (Project), a California corporation, and appellant Les Goetting (Goetting), president and sole owner of Project, for conversion of two oil field pipe testing units. The units test the external seals around pipe joints. Gator Hawk sought damages, attorney's fees, a temporary restraining order, and temporary and permanent injunctions. A temporary restraining order, granted *ex parte* on June 7, 1990, ordered Project and Goetting to refrain from "using, transferring, damaging, operating, destroying, or otherwise disposing of the testing units."

Project and Goetting filed a special appearance and motion to dismiss contesting the trial court's jurisdiction. Following an evidentiary hearing, the trial court denied the motion to dismiss, and granted Gator Hawk a temporary injunction.

Project and Goetting then filed a plea in abatement alleging a lawsuit involving the same controversy was pending in California, and seeking an abatement of the Texas lawsuit until the litigation in California was completed. After a hearing, the trial court overruled the plea in abatement.

Following a trial on the merits to the bench, the trial court rendered judgment ordering Project and Goetting to surrender the two testing units to Gator Hawk, and holding Project and Goetting jointly and severally liable to Gator Hawk for damages of $4,290, plus interest. The trial court filed findings of fact and conclusions of law.

In their first three points of error, appellants assert the trial court erred in concluding it had in personam jurisdiction over them, because the evidence is legally and factually insufficient to support that conclusion. Appellants argue the trial court's ruling was erroneous because (1) the exercise of jurisdiction over appellants is not consistent with federal constitutional due process guaranties, and (2) the Texas long-arm statute[1] does not authorize the exercise of jurisdiction over appellants.

In its first amended original petition, Gator Hawk alleged Project's and Goetting's actions in performing business in the state of Texas were sufficient to constitute the minimum contacts necessary to impose long-arm jurisdiction over them. At the hearing on their Tex.R.Civ.P. 120a special appearance, appellants, as the nonresident defendants, each had the burden of proof to negate all bases of personal jurisdiction. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex.1985). On this appeal, we review the record to determine if appellants negated every possible ground for personal jurisdiction. *General Elec. Co. v. Brown & Ross Int'l Distrib., Inc.*, 804 S.W.2d 527, 529–30 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

At the rule 120a hearing, appellants did not present live testimony, but instead re-

---

1. Tex.Civ.Prac. & Rem.Code Ann. §§ 17.041–17.043    (Vernon 1986).

lied on two affidavits, each signed by Goetting. Both affidavits stated the following:

1.  I [Les Goetting] am the President of Project Engineering USA Corp., a California corporation. A copy of its charter is attached hereto and incorporated herein for all purposes. The principal place of business of Project Engineering USA Corp. is the City of Ventura, County of Ventura, State of California. The sole office of Project Engineering USA Corp. is in Ventura, California.

2.  Project Engineering Corp. is not a resident of the State of Texas and is not required to maintain a registered agent for service in the State of Texas.

3.  Project Engineering USA Corp. does not now engage or has not engaged in business in Texas nor has committed any tort in Texas in whole or in part, within the State.

4.  Project Engineering USA Corp. does not maintain a place of business in Texas and has no employees, servants, or agents within the State.

5.  The equipment the subject of this lawsuit was purchased in the State of California. Since purchase by your affiant the equipment has never left the State of California. To your affiant's knowledge, prior to purchase, the equipment never was in the State of Texas.

6.  The equipment was purchased from a California company which has its principal location in California and which has no Texas office.

7.  Project Engineering USA Corp. has done business with Texas company [sic] but all such business has been done exclusively in the State of California.

Both affidavits dealt only with the *corporation's* activities; neither addressed the activities of Goetting, as an individual, in connection with the state of Texas.

Four witnesses testified at the hearing on behalf of Gator Hawk. Malvern Hasha, president of Gator Hawk, testified as follows: In 1986 and 1987, Project was a sales representative in California for a Texas corporation operating under the name of Tubular Testing Technology (TTT). In July 1986, Les Goetting signed the affiliation agreement in California and returned it by mail to Texas. Goetting visited TTT in Houston shortly after the contract was signed to discuss their relationship and the contract. Project sold TTT's testing services to customers located only in California and Colorado, and TTT paid Project for its sales agent services. The affiliation contract was terminated in 1987, and since that time Project and TTT have had no other relationship with each other.

Clarence Hyatt, vice-president of marketing and domestic sales for Texas Iron Works, Inc. (TIW), testified as follows: Since January 1980, Project has been acting as a non-exclusive distributor for TIW in California. Goetting signed the distributor agreement in Houston; it had been negotiated in California. The agreement contains a choice-of-law provision, choosing Texas law as controlling. The agreement also contains a choice-of-forum provision, choosing Texas state courts sitting in Houston, Texas, as the proper forum for any litigation between the parties. Pursuant to the agreement, Project would sell TIW equipment to California customers, TIW would deliver the product directly to the customers, TIW would invoice the customers directly, and TIW would pay Project a sales commission. Only one sale had actually been made under the contract at the time of the hearing. Except for the time Goetting came to Houston to sign the contract, no one else from Project has met with TIW in Texas, and no future visits by appellants were definitely scheduled. However, Mr. Hyatt stated his expectation of a future visit by appellants to Texas if the present business relationship between the two companies produced a long term business agreement.

Carl Davis, president of Davis–Lynch Inc. (DLI), a Houston company, testified as follows: Project and Goetting were manufacturer's representatives for DLI in Ventura, California. They had operated under an oral representation agreement for the

past six years. Goetting had come to DLI's office in Houston twice to see DLI's products. Goetting's last visit to the Houston office occurred approximately one year earlier. Goetting and Project would receive commissions from DLI on sales they made in California, and DLI would invoice the California customers directly. The commission checks were sent to Project and Goetting from DLI's office in Brazoria County, Texas.

Michael Daley, Gator Hawk's western regional manager located in Ventura, California, testified mainly about the events surrounding the two pipe testing units involved in the lawsuit.

At the end of the hearing, the trial court asked the attorney for Project and Goetting whether he had any live testimony to present. When he answered no, the trial court indicated it had serious questions about whether Project and Goetting had met their burden of proof to negate the existence of personal jurisdiction. The trial court subsequently ruled it had in personam jurisdiction, and jurisdiction over the subject matter in the case.

■ A Texas court may exercise jurisdiction over a nonresident if two conditions are met. First, the Texas long-arm statute must authorize the exercise of jurisdiction. Second, the exercise of jurisdiction must be consistent with the federal and state constitutional guaranties of due process. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990). Our long-arm statute states:

§ 17.042 Acts Constituting Business in this State

*In addition to other acts that may constitute doing business,* a nonresident does business in this State if the nonresident:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this State;

(2) commits a tort in whole or in part in this state; or

(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

TEX.CIV.PRAC. & REM.CODE ANN. § 17.042 (emphasis added).

■ Although it lists particular acts that constitute "doing business," the statute also provides that the nonresident's "other acts" may satisfy the "doing business" requirement. The broad language of the "doing business" requirement permits the statute to reach as far as the federal constitutional requirements of due process will allow. *Schlobohm,* 784 S.W.2d at 357. As a result, we consider only whether it is consistent with federal constitutional requirements of due process for Texas courts to assert in personam jurisdiction over a nonresident defendant. *Guardian Royal Exch. v. English China,* 815 S.W.2d 223, 226 (Tex.1991).

The United States Supreme Court divides the due process requirements into two parts: (1) whether the nonresident defendant has purposely established "minimum contacts" with the forum state; and (2) if so, whether the exercise of jurisdiction comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985); *Guardian Royal Exch.,* 815 S.W.2d at 226.

■ The United States Supreme Court has refined the minimum contacts analysis into *specific* and *general* jurisdiction. However, under either analysis, the goal of the minimum contacts test is to focus on the nonresident defendant's intentional activities and expectations in deciding whether it is proper to call the defendant before the courts of the forum. The defendant must do something purposeful to avail itself of the privilege of conducting activities in the forum, thus invoking the benefit and protection of its laws. *Schlobohm,* 784 S.W.2d at 357. We ask if the defendant should have reasonably expected the call of a Texas court. *Id.* at 359; *General Elec. Co.,* 804 S.W.2d at 530.

■ When *specific* jurisdiction is asserted, the cause of action must *arise out of or relate to* the nonresident defendant's contact with the forum state in order to satisfy the minimum contacts requirement. *Heli-*

*copteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872, n. 8, 80 L.Ed.2d 404 (1984); *Guardian Royal Exch.,* 815 S.W.2d at 227. The minimum contacts analysis focuses on the relationship among the defendant, the forum and the litigation. *Guardian,* 815 S.W.2d at 228.

■ In the present case, Gator Hawk's cause of action against appellants for conversion of the two oil field pipe testing units did not arise out of or relate to appellants' contacts with Texas. Appellants did not have a contractual relationship with Gator Hawk. The testing units were purchased by appellants in California from a California company, and the units have remained in California. Gator Hawk's cause of action for conversion is based on its claim that appellants knew, at the time of their purchase, that the purported seller of the units did not own them, but rather that Gator Hawk owned them. There is no basis in this case for *specific* jurisdiction under the minimum contacts test.

■ *General* jurisdiction may be asserted, even though the cause of action does not arise from or relate to the nonresident defendant's purposeful conduct within the forum state, if there are continuous and systematic contacts between the nonresident defendant and the forum state. When *general* jurisdiction is asserted, the minimum contacts analysis is more demanding and requires a showing of substantial activities in the forum state, not just isolated or sporadic activity. *Guardian Royal Exch.,* 815 S.W.2d at 228; *Schlobohm,* 784 S.W.2d at 357–58.

■ In the present case, the trial court had before it the following evidence relevant to the *general* jurisdiction inquiry:

Appellant's affidavits, which do not address Goetting's individual status or conduct, stated that Project is a California corporation with no employees, servants or agents in Texas, and no place of business in Texas. The affidavits further state that Project does not now engage, and never has engaged, in business in Texas. The affidavits acknowledge that Project has done business with Texas companies, but state that all such business has been done exclusively in the state of California.

Further, the trial court heard testimony that Project has been a sales representative or distributor in California for three different Texas companies during the past few years; Goetting, as president of Project, had visited Texas in connection with its contracts with these Texas companies on at least four different occasions; Project would receive commission checks from the Texas companies; the written contract with one of the Texas companies, TIW, was signed in Houston by Goetting on behalf of Project, and the agreement specified Texas law was controlling and that any litigation under the contract was to be brought in Houston, Texas. One could reasonably infer that in furtherance of its representation efforts, Project necessarily had to keep in regular communication with the Texas companies it represented.

In view of the paucity of the evidence put on by appellants, and considering all of the evidence in the light most favorable to the judgment, we hold the evidence supports a finding that appellants purposefully established "minimum contacts" with Texas under the *general* jurisdiction analysis.

■ Once it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state, the contacts are evaluated in light of other factors to determine whether the assertion of personal jurisdiction comports with fair play and substantial justice. *Guardian Royal Exch.,* 815 S.W.2d at 228. In this inquiry, it is incumbent upon the defendant to present a compelling case that the presence of some consideration would render jurisdiction unreasonable. *Id.* at 231. The following factors, when appropriate, should be considered: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several

states in furthering fundamental substantive social policies. *Id.*

Only in rare instances will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *Guardian Royal Exch.*, 815 S.W.2d at 231. This is true because the minimum contacts analysis encompasses so many considerations of fairness. *Schlobohm*, 784 S.W.2d at 357–358.

The nature and extent of appellants' contacts with Texas justify a conclusion that appellants should expect to be called to our courts. Nothing in the record indicates that litigation in a Texas court would be excessively burdensome or inconvenient to appellants.[2] Litigation in Texas has provided both sides with the benefits and protection of our laws. We hold that the exercise of jurisdiction over appellants by a Texas court did not offend traditional notions of fair play and substantial justice.

We overrule points of error one, two, and three.

In point of error five, appellants assert the trial court's conclusion that it had personal jurisdiction over appellants is not supported by the trial court's findings of fact.

In response to appellants' request, the trial court filed findings of fact and conclusions of law. The trial court's conclusions of law included the following:

A. This Court has jurisdiction over the subject matter and the parties in the above entitled and unnumbered cause.

. . . .

J. All conclusions of law may be considered as findings of fact where appropriate.

The record on appeal does not indicate that appellants requested additional or amended findings or conclusions pursuant to Tex.R.Civ.P. 298, or that appellants objected to the trial court's findings or con-

clusions. Appellants cannot challenge the lack of findings when they failed to timely request additions or amendments. *Goldston Corp. v. Hernandez*, 714 S.W.2d 350, 352 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.).

We overrule point of error five.

In point of error four, appellants assert the trial court erred in overruling appellants' hearsay objection and admitting a document into evidence at the special appearance hearing.

The document, plaintiff's exhibit four, is a credit memo issued from Texas Iron Works to Project for the purpose of paying Project a sales commission on its sale of TIW products in California. Appellants objected that Gator Hawk had not laid the proper predicate for the admission of the document under the business records exception.

We find that any error in the admission of plaintiff's exhibit four was harmless error, in light of the totality of the evidence, because the evidence was merely cumulative. *See Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 230 (Tex.1990).

We overrule point of error five.

In point of error six, appellants assert the trial court abused its discretion in denying appellants' plea in abatement based on the pendency of a lawsuit in California involving the same oil field testing units.

Gator Hawk filed the present lawsuit on June 7, 1990; appellants filed their special appearance on June 20, 1990; a temporary injunction against appellants was signed on June 21, 1990; the temporary injunction order specifically set the case for final trial at 9:00 a.m. on July 30, 1990. On the morning of July 30, 1990, appellants filed their plea in abatement, along with an original answer and a motion for continuance of the trial. After a hearing, the trial court denied the plea in abatement, and continued the trial for one day, to July 31, 1990.

**2.** Distance alone is not ordinarily sufficient to defeat jurisdiction; modern transportation and communication have made it much less burdensome for a party sued to defend himself in a state where he engages in economic activity. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); *Guardian Royal Exch.*, 815 S.W.2d at 231.

It appears from the record that Gator Hawk filed the current lawsuit in Texas *prior to* Project's filing of its lawsuit in California against Gator Hawk and others. In the California lawsuit, Project alleged causes of action based on slander, intentional interference with economic relationship, and claims of ownership of the two oil field testing units. Gator Hawk filed a cross-complaint against Project, Goetting, Coast Petro–Chem., Harry Glass, and "Does 1 through 20," for conversion, receipt of stolen property, and delivery of stolen property.

▬▬▬ A motion to abate a state court proceeding is directed to the discretion of the trial court, and the granting or denying of such a motion will be reversed only for abuse of discretion. *Space Master Int'l v. Porta–Kamp Mfg.*, 794 S.W.2d 944, 946 (Tex.App.—Houston [1st Dist.] 1990, no writ). The mere pendency of an action in one state does not require the abatement of a suit in another state between the same parties and involving the same subject matter; however, as a matter of comity, it is customary for the court in which the later action is instituted to stay proceedings for a reasonable time. *Id.*

▬▬ In light of the facts in the present case, that the Texas lawsuit was filed first, that there was not a complete identity of parties and issues, and that the plea in abatement was filed on the morning the case was to go to trial, we hold the trial court did not abuse its discretion in overruling the plea in abatement.

We overrule point of error six.

▬▬ In point of error seven, appellants assert we should remand for a new trial because "the trial exhibits were lost without fault on the part of appellants."

Appellants do not identify in their brief which trial or evidentiary hearing they are referring to. The appellate record contains statements of facts covering hearings held June 20, 1990 (evidentiary hearing on appellants' special appearance and Gator Hawk's application for temporary injunction), July 30, and 31, 1990 (hearing on appellants' plea in abatement and motion for continuance, and on Gator Hawk's motion for sanctions), and August 1, 1990 (evidentiary hearing, resulting in the final judgment signed August 20, 1990). The August 20, 1990, final judgment recites that a non-jury trial in the case was held August 1, 1990.

Appellants state the "trial exhibits have not been filed because they were lost without fault on appellants' part." In support of this statement, appellants attached to their brief the affidavit of Cynthia Owens, certified court reporter, and the affidavit of Vanessa Miller, court manager for the Harris County District Clerk's office. Cynthia Owen's affidavit states that in her official capacity as court reporter, she "reported the trial of the case styled Gator Hawk, Inc. v. Project Engineering, Inc. and Les Goettings, Cause No. 90–30115, tried in the 157th District Court *on August 20, 1990*." (Emphasis added.) At the conclusion of the trial, she delivered the trial exhibits to the Harris County District Clerk's office for safekeeping, and when she later asked for them back to include in the statement of facts, the District Clerk was unable to find the trial exhibits.

Vanessa Miller, court manager for the district clerk's office, states in her affidavit the following:

> In my official capacity as employee of the District Clerk's office, I was requested by Cynthia Owens, a Substitute Certified Shorthand Reporter, to retrieve the exhibits introduced during the trial of a case styled Gator Hawk, Inc. v. Project Engineering, Inc. and Les Goettings, cause number 90–30115, tried in the 157th District Court *on August 20, 1990*.
>
> The records of the District Clerk's office do not indicate the above-described exhibits were delivered to the District Clerk's office for safekeeping by Ms. Owens. As a precautionary measure, however, I have conducted a search for such trial exhibits and they are not now in the custody of the District Clerk's office.
>
> As a result, despite extensive efforts taken on the part of myself and the District Clerk's office, the exhibits cannot be

found in the possession of the District Clerk's office.

(Emphasis added.)

It is appellants' argument that, under TEX.R.APP.P. 50(e), they are entitled to a new trial because the trial exhibits have been lost without their fault, and appellants and Gator Hawk cannot agree on substitute exhibits. Appellants have the burden to show that the exhibits are indeed lost or destroyed before they can obtain a new trial under rule 50(e). Appellants have failed to meet their burden.

The affidavits submitted by appellants merely tell us that the district clerk's office cannot locate any exhibits from an August 20, 1990, trial in the case. This is understandable, since no trial was held in the case on August 20, 1990; the trial was held August 1, 1990.

We overrule point of error seven.

We affirm the judgment.