**SHEARSON LEHMAN BROTHERS, INC., f/k/a Shearson Lehman Hutton, Inc., and Shearson Lehman Brothers Holdings, Inc., f/k/a Shearson Lehman Hutton Holdings, Inc., Appellants,**

v.

**HUGHES, HUBBARD, & REED, Appellee.**

No. 01–92–01114–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 1, 1995.

Rehearing Overruled July 13, 1995.

**62**

Kenneth R. Wynne, Mark Maney, Gregory A. Pierce, Houston, for appellants.

Parker C. Folse, III, Houston, for appellee.

Before ANDELL and HUTSON–DUNN, JJ., and DUGGAN,* Justice (Retired).

## OPINION

ANDELL, Justice.

This is an appeal from the trial court's granting of the special appearance of appellee, Hughes, Hubbard & Reed (hereinafter HHR). Appellants, Shearson Lehman Brothers, Inc. and Shearson Lehman Brothers Holdings, Inc. (collectively Shearson), contend that trial court erred when it dismissed their malpractice and breach of fiduciary duty claims against HHR. We are presented with the issue of whether HHR's contacts with the State of Texas were sufficient to establish personal jurisdiction. We hold that they were not, and affirm the trial court's dismissal.

### Standard of Review

During a special appearance hearing, a nonresident defendant has the burden of proof to negate all bases of personal jurisdiction. *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985); *Project Eng'g USA v. Gator Hawk,* 833 S.W.2d 716, 719 (Tex.App.—Houston [1st Dist.] 1992, no writ). On appeal this Court will review all the evidence in the record to determine if the nonresident met this burden. *General Elec. Co. v. Brown & Ross Int'l Distrib., Inc.,* 804 S.W.2d 527, 529–30 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

### Facts

E.F. Hutton & Co., Inc. (Shearson's predecessor in interest), an investment-banking company based in New York City, agreed to underwrite an offering for its client, Houston Biotech, Inc. (HBI). To this end, HBP, a separate limited partnership, was created by HBI and Hutton, and HBP securities in the

---

* Justice Duggan, who retired on December 31, 1994, continues to sit by assignment for the dis- position of this case, which was submitted prior to that date.

form of limited partnership interests were registered and offered publicly nationwide. The "blue sky" section of HHR's Los Angeles office was retained by Hutton personnel in New York to act as legal counsel in the creation of HBP and the registration process. HHR is a law firm based in New York City with offices in New York, Los Angeles, Washington, D.C., Miami, and Paris.

■ To offer securities for sale nationally, the securities must first be registered with the SEC and with the appropriate state regulatory authority for every state in which the securities are to be sold. HHR was responsible for registering HBP's limited partnership interests nationally, including in Texas. After the HBP offering closed, it was discovered that a large oversale of HBP securities had occurred in Texas. Although Texas law provided a remedy for curing an oversale,[1] the statutory deadline for effecting such a cure passed without any action being taken. Shearson complains that they were forced to rescind the Texas offering as a result of HHR's legal malpractice and HHR's breach of their fiduciary duty to Shearson.

It is Shearson's contention that HHR's contacts with Texas, as set out in the record, were sufficient to establish both general and specific jurisdiction. The facts relied upon by Shearson in support of their claims are: (1) the nature of HHR's "blue sky" legal practice; (2) the agreement between Shearson and HHR that HHR would be responsible for the registration of the securities; (3) three trips made by HHR personnel to Texas and; (4) various communications by HHR personnel with individuals and state agencies in Texas.

### Exercise of jurisdiction by a Texas court

■ A Texas court may exercise jurisdiction over a nonresident if: (1) the Texas long-arm statute authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction is consistent with federal and state constitutional guarantees. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990); *General Elec. Co.,* 804 S.W.2d at 530.

### The Texas long-arm statute

■ The Texas long-arm statute authorizes the exercise of jurisdiction over a nonresident "doing business" in Texas. TEX.CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon Supp.1995). The broad language of the statute's "doing business" requirement permits the statute to reach as far as the federal constitutional requirements will allow. *Guardian Royal Exch. Assurance v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991). Therefore, we need only consider whether it is consistent with federal constitutional requirements of due process for Texas courts to assert in personam jurisdiction over a nonresident defendant. *Id.* at 226.

### Federal constitutional due process

■ Federal constitutional requirements of due process limit the power of the state to assert personal jurisdiction over a nonresident defendant such as HHR. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 1871–72, 80 L.Ed.2d 404 (1984). The United States Supreme Court divides the due process requirement into two parts: (1) whether the nonresident defendant has purposely established minimum contacts with the forum state; and (2) if so, whether the exercise of jurisdiction comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985).

■ Minimum contacts analysis requires a determination of whether the nonresident defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Guardian Royal,* 815 S.W.2d at 226. This "purposeful availment" requirement ensures that a nonresident defendant will not be haled into a jurisdiction based solely upon "random," "fortuitous," or "attenuated" contacts or the "unilateral activity of another party or third person." *Id.* at

---

1. 68th Leg., R.S. ch. 238, § 81, 1985 Tex.Gen. Laws 1179, 1201, *amended by* Act effective September 1, 1987, 70th Leg., R.S. ch. 732, § 2, 1987 Tex.Gen.Laws 2638, 2639–40 (current version at TEX.REV.CIV.STAT.ANN. art. 581–35 E (Vernon 1991).

226 (citing *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2183). Minimum contacts analysis has been further refined into general and specific jurisdiction.

### (1) General jurisdiction

General jurisdiction may be asserted when the cause of action does not arise from, or relate to, the nonresident defendant's purposeful conduct within the forum state, but there are continuous and systematic contacts between the nonresident defendant and the forum state. *Guardian Royal,* 815 S.W.2d 223, 228; *Schlobohm,* 784 S.W.2d at 357. When general jurisdiction is asserted, the minimum contacts analysis requires a showing of substantial activities in the forum state. *Id.*

Shearson asserts that HHR maintained continuous and systematic contacts with Texas. They contend that by virtue of its "national Blue Sky practice," HHR subjected itself to jurisdiction in any state where it provided advice concerning that state's laws. Shearson argues that HHR markets its "product" (i.e., its legal advice concerning "blue sky" matters) in all 50 states. Since its product, HHR's advice concerning Texas law, was "defective", Shearson maintains that jurisdiction is proper in Texas. We disagree.

In *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), the Supreme Court held that "if the sale of a product ... arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its products in other states, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others." Likewise, the Supreme Court in *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781, 104 S.Ct. 1473, 1481, 79 L.Ed.2d 790 (1984) held that when the respondent magazine had "continuously and deliberately exploited the New Hampshire market, it must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine."

Although Shearson contends that these cases are controlling, we disagree. Shearson confuses the idea of nationally marketing a product, as in *World–Wide* and *Keeton,* and marketing a product such as legal advice on state blue sky laws, that is national in scope. Shearson provides no evidence to support their claim that HHR marketed its legal services on a national scale. In fact, there is no evidence to show that HHR marketed its legal services anywhere other than where its offices were located. The product that was sold nationally in this case was HBP in the form of limited partnership interests. HHR's legal advice was sold only to Shearson in New York. Therefore, Shearson has failed to show how HHR's having a "national blue sky" practice can support a finding of general jurisdiction.

In *Billingsley Parts and Equipment, Inc. v. Vose,* 881 S.W.2d 165, 169 (Tex.App.— Houston [1st Dist.] 1994, writ denied), we held that a nonresident defendant, who initiated contact with a Texas company, made numerous phone calls to them over a period of one year, and was paid commissions by checks drawn on a Texas bank, did not have systematic and continuous contacts with Texas sufficient to support a finding of general jurisdiction. *Id.* at 169. An examination of the contacts between HHR and Texas clearly shows that they were far more limited than those rejected by this court in *Billingsley.* Therefore, we hold that HHR's contacts with Texas were not so systematic or continuous to serve as the basis for general jurisdiction in a Texas court.

### (2) Specific jurisdiction

For specific jurisdiction to be asserted, the cause of action must arise out of or relate to the nonresident defendant's contact with the forum state in order to satisfy the minimum contacts requirement. *Guardian Royal,* 815 S.W.2d at 227. The contact between the nonresident defendant and the forum state must have occurred as a result of the nonresident defendant's purposeful conduct and not the unilateral activity of the plaintiff or others. *Id.* at 227.

Furthermore, the nonresident defendant's activities must have been "purposefully directed" to the forum and the litigation must result from alleged injuries that

"arise out of or relate to" those activities. When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship among the defendant, the forum and the litigation.

*Guardian Royal,* 815 S.W.2d at 228 (citations omitted).

 Shearson contends that its claims arise out of HHR's purposefully directed contacts with Texas. However, Shearson is mistaken. Although HHR did have some contact with Texas during the creation of HBP and the registration process,[2] Shearson's claims did not arise until long after the registration process was completed.

### (a) The registration process

Shearson contends that the facts that an oversale of the HBP securities occurred in Texas,[3] and that the statutory deadline for effecting a cure of the oversale passed before any action was taken to solve the problem, prove that HHR did not successfully complete its Texas registration work. Shearson argues that it was required to rescind the Texas offering because the HBP securities were not properly registered in Texas. Shearson's analysis of the situation is exactly backwards. Under Texas law, "No dealer, agent or salesman shall sell or offer for sale any securities ... *except those which shall have been registered....*" Tex.Rev.Civ.Stat. Ann. art. 581–7(A)(1) (Vernon 1964) (emphasis added). Shearson, on the advice of HHR, directed HHR to register $1 million of HBP securities in Texas and HHR successfully did so.[4] Shearson was fully aware of the amount of securities registered, and took no action to have the original registration amended. The fact that *Shearson* sold millions of dollars more of the HBP securities in Texas than had been registered does not negate the

validity of the initial registration.[5] We hold that Shearson's claims against HHR did not arise as a result of HHR's contacts with Texas during the registration process. Therefore, those contacts cannot serve as the basis for asserting specific jurisdiction over HHR.

### b) The malpractice claim

Shearson contends that HHR committed legal malpractice and as a result, Shearson was forced to expend over $5.4 million to rescind the Texas offering. The core of Shearson's malpractice claim is that HHR failed to do any research in regards to the Texas oversale problem and therefore did not advise Shearson that there was a statutory deadline for effecting a cure. This, Shearson contends, was the direct cause for Shearson's having to make the rescission offer in Texas.

All communications between HHR and Shearson in regards to the Texas oversale, up to and beyond the passing of the deadline to cure, took place in and between California and New York. All of HHR's acts or omissions relating to its research occurred in HHR's Los Angeles office. Nevertheless, it is Shearson's contention that HHR is subject to the jurisdiction of a Texas court solely on the basis of HHR's advice to Shearson regarding the oversale.

### Foreseeability

Shearson contends that the Texas rescission was the reasonably foreseeable result of the failure of HHR to advise them of the deadline for the cure of the oversale. Therefore, Shearson claims that HHR should be subject to jurisdiction in Texas on the basis of foreseeability alone.

---

2. HHR made two trips to Texas and communicated, by telephone, mail, and fax, with Texas regulatory agencies, HBI personnel and Vinson & Elkins, a Texas based law firm representing HBI during the registration process.

3. Oversales of the HBP securities also occurred in two states other than Texas.

4. When Shearson representatives in Texas began to sell the HBP securities prior to the completion of the registration process, Shearson immediate-

ly retained a Texas law firm to act as counsel in dealing with the problems that this situation created with the Texas regulatory agencies. Shearson was well aware of when the securities were properly registered and when they were not.

5. HHR was not involved in the sale of the HBP limited partnership interests beyond registering the securities for sale and was not aware that oversales had occurred in three states until some time after the HBP offering had closed.

Shearson relies on a line of cases which hold that even if a defendant performs no physical act within the state, activities outside the state can provide adequate contacts to support jurisdiction if they have reasonably foreseeable consequences within the state. *See, e.g., General Elec. Co.*, 804 S.W.2d at 533 (citing *Siskind v. Villa Foundation for Education, Inc.*, 642 S.W.2d 434, 438 n. 5 (Tex.1982)); *see also Calder v. Jones*, 465 U.S. 783, 789–90, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984). In each of the cases cited by Shearson in which the activities of the nonresident defendant outside the forum state were found to be sufficient to support jurisdiction on the basis of their foreseeable consequences within the state, the finding of foreseeability was based on the *intentional activities* of the nonresident defendant *directed at the forum state.*

■ This is not the case here. HHR was unaware of the existence of a deadline for curing the oversale in Texas until several weeks after the deadline had expired. In addition, the allegedly defective advice regarding the cure of the oversale was directed at Shearson in New York and not at Texas.

■ Foreseeability alone has never been a sufficient benchmark for personal jurisdiction under federal due process. *World–Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. at 566. Foreseeability has been held to be enough only in those cases in which the nonresident defendant could or should have foreseen the consequences that occurred within the forum state because the consequences were the result of the defendant's intentional conduct directed at the forum state. Shearson has cited no law to support its contention that the negligent advice of a nonresident law firm, directed at a New York client regarding an aspect of Texas law, should subject that law firm to the jurisdiction of Texas courts. To hold that the foreseeability analysis of *General Electric* should apply in this case would greatly expand that doctrine beyond its present reach and we decline to do so.

### c) The breach of fiduciary duty claim

Shearson contends that HHR represented both Shearson and Houston Biotech entities,[6] and that a conflict arose out of that dual representation. This, Shearson claims, caused HHR to neglect its duties to Shearson resulting in the passing of the deadline and the necessity of the rescission offer.

■ The only example of HHR's breach of its fiduciary duty to Shearson, however, is that HHR disclosed communications between Shearson and HHR to the Houston Biotech entities without obtaining permission from Shearson prior to doing so. The disclosure to which Shearson refers occurred well past the point at which the oversale could have been cured and thus can not serve as the basis for a claim against HHR on the issue of the oversale.

### Venue notion of the trial court

Shearson complains that the trial court incorrectly applied a venue-type analysis to the facts of the case rather than the proper jurisdictional analysis. Having found that the trial court was correct in concluding that Texas courts do not have personal jurisdiction over HHR in this case, we conclude that the trial court did not err in its analysis.

### Conclusion

We hold that HHR's contacts with Texas were inadequate to establish either general or specific jurisdiction in Texas under a minimum contacts analysis. In so holding, we also hold that the evidence was sufficient to support the findings of the trial court and the trial court did not impermissibly reach the merits of the case or err by failing to make additional findings.

We affirm the judgment of the trial court.

---

6. Originally HBP's management was controlled by Hutton but when Shearson acquired and merged into Hutton it triggered the right of HBI to acquire HBP's management interest. HHR continued to represent both Shearson and the Houston Biotech entities after informing them both of the potential for future conflict and requesting permission from both to do so.