**Raymond JAMES, Appellant,**

v.

**ILLINOIS CENTRAL RAILROAD COMPANY, Appellee.**

**No. 01–95–01225–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 26, 1998.

595

H. Chris Christy, North Little Rock, AK, David A. Furlow, Houston, for appellant.

John M. Ribarits, Richard M. Simses, Lawrence E. Abbott, Houston, Patricia W. Oppenheim, New Orleans, LA, for appellee.

Before WILSON, ANDELL and HUTSON–DUNN,* JJ.

## OPINION

WILSON, Justice.

Raymond B. James appeals from the trial court's order sustaining the special appearance in favor of Illinois Central Railroad Company (Illinois Central). In eight points of error, James contends personal jurisdiction over Illinois Central in Texas is proper because inter alia: (1) minimum contacts analysis has been satisfied; (2) Illinois Central waived its right to challenge jurisdiction; and (3) territorial jurisdiction over Illinois Central was satisfied when its agent was served with process while conducting business in Texas. We affirm the trial court's order.

### Facts

On January 9, 1994, James suffered personal injuries while performing his duties as a railroad switchman for Illinois Central. The accident occurred in Memphis, Tennessee, which is also the permanent residence of James. Illinois Central is a Delaware corporation with its principal office located in Chicago, Illinois. Illinois Central has one office in Houston, Texas that serves as the location for one of its national accounts managers, Robert T. Hanly.

James filed a personal injury suit in Harris County, Texas on January 9, 1994. Illinois Central subsequently filed a special appearance to contest the court's in personam jurisdiction. After a hearing, the trial court entered an order granting Illinois Central's special appearance. James requested findings of fact and conclusions of law and brought this appeal to contest the trial court's order.

### Standard of Review

■ On appeal from a special appearance, we review all evidence in the record to determine if Illinois Central (the non resident defendant) negated all possible grounds for personal jurisdiction. *Kawasaki Steel Corp.*

v. *Middleton*, 699 S.W.2d 199, 203 (Tex.1985); *General Elec. Co. v. Brown & Ross Int'l*, 804 S.W.2d 527, 529–30 (Tex.App.—Houston [1st Dist.] 1990, writ denied). Existence of personal jurisdiction is a question of law, but proper exercise of that jurisdiction must sometimes be preceded by the resolution of underlying factual disputes.

■ Findings of fact and conclusions of law are binding upon the appellate court unless challenged on appeal. *Linton v. Airbus Industrie*, 934 S.W.2d 754, 757 (Tex. App.—Houston [14th Dist.] 1996, no writ) (citing *Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 632 (Tex.App.—Dallas 1993, writ denied)). Because the findings of fact are not contested, we therefore limit our review to the correctness of the legal conclusions the trial court draws from or applies to the facts found. *Linton*, 934 S.W.2d at 757.

### Personal Jurisdiction

■ In points of error one and two, appellant challenges the correctness of the trial judge's legal conclusions drawn from facts that are unchallenged on appeal. A court may assert personal jurisdiction over a non resident defendant if: (1) the requirements of the Texas long-arm statute are fulfilled and (2) the exercise of jurisdiction complies with the due process clause of the Fourteenth Amendment to the United States Constitution. *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996); *Thorpe v. Volkert*, 882 S.W.2d 592, 596 (Tex.App.—Houston [1st Dist.] 1994, no writ). The long-arm statute allows jurisdiction over non residents who are "doing business" in Texas. Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1997). Section 17.042 states:

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
>
> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

---

* The Honorable D. Camille Hutson–Dunn, retired Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

■ commits a tort in whole or in part in this state; or

■ recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

■ In this case, Illinois Central leases one office in Texas staffed by Mr. Hanly, a Texas resident. Hanly acts as a liaison between Illinois Central and its petroleum and chemical customers located in Alabama, Arizona, Louisiana, Oklahoma, and Texas. Specifically, Hanly coordinates the day-to-day services rendered by Illinois Central to its customers in this five-state region. These services include scheduling the time and rate of railway transportation. Hanly's only contracting authority is related to the transportation rate that is charged by Illinois Central to its customers. Based on Hanly's employment in Harris County and his duties, we conclude as a matter of law that Illinois Central is "doing business in Texas" as that standard is understood under the Texas long-arm statute.

■ Further, the Texas Supreme Court has interpreted the broad language of section 17.042 "to reach as far as the federal constitutional requirements of due process will allow." *CSR Ltd.*, 925 S.W.2d at 594 (quoting *Guardian Royal Exch. Assur. Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991)). Thus, the requirements of the Texas long-arm statute are satisfied if the assertion of personal jurisdiction is consistent with federal constitutional limitations. *CSR Ltd.*, 925 S.W.2d at 594. The constitutional requirements are divided into two parts: (1) whether the non resident defendant has purposely established minimum contacts with the forum state; and (2) if so, the maintenance of the suit would not offend "traditional notions of fair play and substantial justice." *Id.; Shearson Lehman Bros., Inc. v. Hughes, Hubbard, & Reed*, 902 S.W.2d 60, 63 (Tex.App.—Houston [1st Dist.] 1995, writ denied).

## 1. Minimum Contacts

■ A non resident defendant has sufficient minimum contacts if it has purposely availed itself of the benefits and protections of conducting business within that state. *CSR Ltd.*, 925 S.W.2d at 594–95 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985)). This limitation prevents defendants from being brought into Texas courts based upon random, fortuitous or attenuated contacts, or the unilateral activity of another party. *CSR Ltd.*, 925 S.W.2d at 595. Based upon its contact with the state, the defendant must reasonably expect to be haled into a Texas court. *Project Engineering USA Corp. v. Gator Hawk, Inc.*, 833 S.W.2d 716, 721 (Tex.App.—Houston [1st Dist.] 1992, no writ). Minimum contacts analysis has been divided further into general and specific jurisdiction. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 358 (Tex.1990).

■ General jurisdiction is proper when the defendant's contacts are continuous and systematic. *CSR Ltd.*, 925 S.W.2d at 595. Under general jurisdiction standards, the cause of action asserted need not relate to the activities conducted within the forum state by the defendant. In such cases, however, the minimum contacts analysis becomes more demanding because the contacts must be substantial. *Id.; Billingsley Parts & Equip. v. Vose*, 881 S.W.2d 165, 169 (Tex.App.—Houston [1st Dist.] 1994, writ denied). Specific jurisdiction analysis requires that the cause of action arise out of or relate to the defendant's conduct within the state. *CSR Ltd.*, 925 S.W.2d at 595. Because James's accident is not related in any way to Illinois Central's activities in Texas, our minimum contacts analysis will focus on general jurisdiction.

Illinois Central's argument supporting the lack of minimum contacts in Texas is focused on the following facts: (1) the accident is not related to its business transactions in Texas; (2) Illinois Central is a foreign corporation that is not required to maintain an agent for service of process in Texas; (3) Illinois Central has only one office staffed by one person in Texas; (4) Hanly lacks authority to contractually bind Illinois Central; and (5) Illinois Central does not have a bank account in Texas. However, Illinois Central does not dispute that it solicits business in Texas. As

recently as 1990, Illinois Central generated $75 million of business in Harris County. Additionally, although Illinois Central may not own railroad tracks in Texas, it does operate them. Regardless of these facts, a more compelling factor is the continuous operation of an office in Harris County that employs an agent of Illinois Central.

In *CMMC v. Ambrocio Salinas,* 929 S.W.2d 435, 436 (Tex.1996), the Texas Supreme Court found that personal jurisdiction could not be exercised over a foreign manufacturer of a defective product. In *CMMC,* a French manufacturer of wine production equipment sold a wine press to an independent distributor of equipment, headquartered in New York. *Id.* The distributor subsequently sold the machine to a Texas winery. *Id.* An employee of the winery injured his arm while operating the machine and filed suit against CMMC. *Id.* at 437. Although the inception of this case and the one now before this Court are different, the facts that control in personam jurisdiction are the same. The court in *CMMC* recognized that CMMC did not have a place of business, a representative, nor any other contacts with Texas. *Id.* at 436–37. As a result, jurisdiction was denied. In contrast, Illinois Central has an office in Texas staffed by a full-time representative. This office solicits business from citizens of this state and generates substantial amounts of income.

Similarly, in *CSR Ltd. v. Link,* the Texas Supreme Court denied general jurisdiction over an Australian corporation. 925 S.W.2d at 595. CSR sold asbestos to a distributor who then shipped it to Houston. *Id.* at 594. Plaintiffs alleged they were injured by exposure to the CSR asbestos. *Id.* Once again, the court noted that CSR had no offices in Texas, no employees in Texas, and did not solicit business in Texas. *Id.* at 595.

Further, in *General Electric Co. v. Brown & Ross Int'l Distrib., Inc.,* 804 S.W.2d 527, 531 (Tex.App.—Houston [1st Dist.] 1990, writ denied), this Court found sufficient minimum contacts to support general jurisdiction over a New York manufacturer of electrical parts. Recognizing that Brown & Ross solicited customers in Texas, we stated "that routine sales and other profit-making activities in another state will subject a corporation to general jurisdiction in that state." *Id.*

More recently, this Court upheld a trial court's finding of general jurisdiction over a California corporation with no agents nor place of business in Texas. *Gator Hawk, Inc.,* 833 S.W.2d at 722. The evidence indicated that the defendant company acted as a sales representative for three different Texas clients. *Id.* The company received commission checks from Texas clients and the president of the company visited Houston, Texas on at least four occasions. *Id.* Also, one of the sales contracts stated that Texas would be the forum to settle disputes. *Id.* A comparison of the contacts between Illinois Central and James shows that they were more systematic and continuous than those that were accepted by this Court in *Gator Hawk* to find a basis of personal jurisdiction.[1]

By conducting business in a permanent office in Harris County, Texas, Illinois Central has availed itself of the benefits and protections offered by the laws of this state. Moreover, by maintaining an office and an agent that solicits business from this state, Illinois Central has purposely established minimum contacts such that it could reasonably foresee being sued in Texas. We hold as a matter of law that Illinois Central had

---

1. For other cases in which courts noted the lack of an office, agent, or the solicitation of business as determinative to the exercise of in personam jurisdiction, see *National Industrial Sand Ass'n v. Gibson,* 897 S.W.2d 769, 772–74 (Tex.1995) (no general jurisdiction where defendant has never maintained an office or other place of business in Texas, nor had any agents in Texas); *International Turbine Service, Inc. v. Lovitt,* 881 S.W.2d 805, 810 (Tex.App.—Fort Worth 1994, writ denied) (no general jurisdiction where defendant did not have an office, employee, or market business within the State); *Clark v. Noyes,* 871 S.W.2d 508, 518–20 (Tex.App.—Dallas 1994, no writ) (no general jurisdiction over an individual who had no business interests in Texas); *Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 634–35 (Tex.App.—Dallas 1993, writ denied) (no general jurisdiction over defendant which did not maintain a place of business in Texas, had no employees from Texas, nor solicited business from Texas); *Scott v. Huey L. Cheramie, Inc.,* 833 S.W.2d 240, 242 (Tex.App.—Houston [14th Dist.] 1992, no writ) (no general jurisdiction, over corporation which had no office or agent in Texas).

sufficient minimum contacts with Texas to support jurisdiction.

## 2. Fair Play and Substantial Justice

 Once it is established that the non resident defendant maintained substantial minimum contacts with the forum state, we then must determine whether the exercise of personal jurisdiction would comply with concepts of fair play and substantial justice. *Guardian Royal Exch. Assur. Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex.1991). This determination can be made by considering the following factors: (1) the burden on the defendant; (2) the interests of Texas in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interest of the interstate judicial system in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* at 228, 231; *Gator Hawk*, 833 S.W.2d at 722–23.

 It is a rare instance when jurisdiction will not comport with fair play and substantial justice once the minimum contacts analysis has been satisfied. *Guardian Royal Exch.*, 815 S.W.2d at 231; *Gator Hawk*, 833 S.W.2d at 723. Although the burden on Illinois Central in defending this lawsuit would be minimal,[2] all other factors indicate that personal jurisdiction over Illinois Central would be unreasonable. Most notably, Texas has no interest in adjudicating this dispute. The cause of action did not occur in Texas, and neither party is a resident of this state. In *Guardian Royal*, the court sustained a finding of minimum contacts, but then refused to exercise personal jurisdiction once it became apparent that the real parties in interest had no significant relation to Texas.

*Guardian Royal*, 815 S.W.2d at 232–33. Additionally, the state's interest is further diminished because James's injury has no relation to Illinois Central's activities in Texas.[3]

Thus, Texas, by subjecting Illinois Central to its court system, would not be protecting its citizens from the potential future actions of Illinois Central. Although Texas has an interest in providing a cost effective means of producing evidence and witnesses, the record indicates that all the evidence and witnesses are in Tennessee. *See Lujan v. Sun Exploration & Prod. Co.*, 798 S.W.2d 828, 833 (Tex.App.—Dallas 1990, writ denied) (citing *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)).

 We conclude that the assertion of personal jurisdiction over Illinois Central would offend concepts of fair play and substantial justice.[4] Accordingly, we overrule points of error one and two.

## Jurisdiction by Consent or Waiver

In point of error three, James contends that even though Illinois Central filed a special appearance, it nevertheless consented to jurisdiction by defending other lawsuits in Texas. James argues that Illinois Central's involvement in the *Ike Ford* and *Newsome* cases is evidence that it has consented to the jurisdiction of Harris County courts. In his appellate brief, James cites *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), as support for his proposition that Illinois Central has consented to jurisdiction.

 The Court in *Perkins* did allow personal jurisdiction over a non resident corporation, but James's reliance on *Perkins* is misplaced. Rather than basing jurisdiction

---

**2.** Illinois Central has defended other lawsuits in Texas including *Newsome v. Illinois Central R.R.*, Cause No. 90–S–03309–C, filed in Matagorda County, Texas and *Ike Ford v. Illinois Central R.R.*, No. 92–041848, filed in Harris County, Texas..

**3.** As explained above, James suffered personal injuries in Tennessee while performing his duties as a switchman. Illinois Central's only conduct in Texas involves the employment of Hanly, an accounts manager.

**4.** The Dissent argues that this case would have been more appropriately addressed under forum non conveniens. The doctrine of forum non conveniens is a procedural rule which does not determine jurisdiction but only determines that *jurisdiction which exists* should not be exercised where another forum, also having jurisdiction, is better able to act. *Direct Color Services, Inc. v. Eastman Kodak Co.*, 929 S.W.2d 558, 562 (Tex. App.—Tyler 1996, writ denied).

on a theory of consent, the Court focused on the systematic and continuous contacts of the corporation's president. *See Perkins*, 342 U.S. at 447–48, 72 S.Ct. at 419–20. As noted by the United States Supreme Court, consent, as a basis for obtaining personal jurisdiction over a foreign corporation, has been abandoned. *McGee v. International Life. Ins. Co.*, 355 U.S. 220, 222, 78 S.Ct. 199, 200–201, 2 L.Ed.2d 223 (1957) ("In a continuing process of evolution this Court accepted and then abandoned 'consent,' 'doing business,' and 'presence' as the standard for measuring the extent of state judicial power over such corporations.")

Article 8.01 of the Texas Business Corporations Act provides that a foreign corporation is not considered to be conducting affairs in this state as a result of maintaining or defending any action or suit to which it is a party. TEX. BUS. CORP. ACT ANN. art. 8.01 (Vernon Supp.1998). Regardless of its involvement in other litigation, a court's exercise of personal jurisdiction over an unlicensed non resident corporation depends upon minimum contacts analysis and considerations of fair play and substantial justice. *See Malaysia British Assur. v. El Paso Reyco, Inc.*, 830 S.W.2d 919, 920–21 (Tex.1992).

Finding no basis that Illinois Central has consented to the jurisdiction of Texas courts regarding this case, we overrule James's third point of error.

### Territorial Jurisdiction

In his fourth point of error, James contends he secured territorial jurisdiction over Illinois Central by serving its agent, Hanly, in Harris County. As authority for his proposition, James cites *Burnham v. Superior Court of California*, 495 U.S. 604, 628, 110 S.Ct. 2105, 2119, 109 L.Ed.2d 631 (1990), where the Court conferred jurisdiction over a New Jersey resident while he was temporarily present in California. The Court harkened back to its earlier decisions to hold that personal service over an individual comports with traditional notions of fair play and substantial justice regardless of the brevity of the defendant's presence in the forum. *See Burnham*, 495 U.S. at 608–618, 110 S.Ct. at 2109–13. Based on *Burnham*, James now urges this Court to extend these same principles to Illinois Central.

Also, James refers us to *Acacia Pipeline Corp. v. Champlin Exploration, Inc.*, 769 S.W.2d 719 (Tex.App.—Houston [1st Dist.] 1989, no writ), to further support his notion of territorial jurisdiction. In *Acacia*, we did hold that when a foreign corporation is licensed and authorized to transact business in Texas,[5] it has consented to the jurisdiction of Texas courts for all purposes. *Id.* at 720. In essence, the licensed corporation is present in this state for purposes of in personam jurisdiction. However, Illinois Central is not a licensed foreign corporation of this state, thus the applicability of *Acacia* can be summarily dismissed.

Further, we refuse to extend the logic of *Burnham* to the facts before this Court. First, *Burnham* involved a non resident *individual*, and the Court specifically omitted any reference of personal jurisdiction regarding corporations. *Burnham*, 495 U.S. at 610 n. 1, 110 S.Ct. at 2110 n. 1. Secondly, the Court in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316–19, 66 S.Ct. 154, 158–60, 90 L.Ed. 95 (1945), recognized the problem of applying "presence" as a form of jurisdiction over the corporate fiction. The Court stated:

> [u]nlike an individual its "presence" without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it.... For the terms "present" or "presence" are used to merely symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process.

---

**5.** The rights and duties of foreign corporations authorized to conduct business in Texas are set out in articles 8.01–.18 of the Texas Business Corporations Act. TEX. BUS. CORP. ACT ANN. art. 8.01, 8.02, 8.03 (Vernon Supp.1998), art. 8.04 (Vernon 1980), art 8.05, 8.06 (Vernon Supp. 1998), art 8.07, 8.08 (Vernon 1980), art 8.09 (Vernon 1980 and Supp.1998), art 8.10 (Vernon 1980) art. 8.13, 8.14, 8.15 (Vernon Supp.1998), art. 8.16 (Vernon 1980 and Supp.1998), art 8.17, 8.18 (Vernon 1980).

*International Shoe Co.*, 326 U.S.at 316–17, 66 S.Ct. at 158. As we have previously stated, personal jurisdiction may be exercised over a non resident corporate defendant if the requirements of the due process clause to the United States Constitution and the Texas long-arm statute are satisfied. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996). Finally, it would be illogical for this Court to hold that all unlicensed foreign corporations are subject to the jurisdiction of Texas courts simply because their agents are physically present in the state. Because we refuse to hold that Illinois Central was present in Texas for purposes of jurisdictional analysis, we overrule James's fourth point of error.

## Miscellaneous Points

In his fifth point of error, James contends the trial court erred in granting Illinois Central's motion to quash the subpoena of Hanly. Specifically, James claims the testimony of Hanly, at the special appearance, was necessary so James could prove Hanly's involvement and lack of credibility regarding his authority as national accounts manager of Illinois Central. James further contends he needed to examine Hanly regarding the differences in deposition testimony he gave between 1990 and 1995. James alleges these inconsistencies in testimony support a finding of personal jurisdiction. The trial court heard the motion at the beginning of the special appearance and took it under advisement until the close of the proceeding. At the end of the hearing, the trial judge granted the motion to quash, finding that the testimony of Hanly was not needed.

■ In light of the totality of the evidence presented at the special appearance, any error by the lower court was harmless. Regarding the testimony of Hanly, counsel for James admitted at the special hearing, "I probably have 99 percent of what I need attached." Counsel also stated that Hanly's testimony would be "duplicative of some of the deposition testimony." It was not an abuse of discretion for the trial judge to omit evidence that was merely cumulative. *Gator Hawk*, 833 S.W.2d at 723. Thus, we overrule James's fifth point of error.

In his sixth point of error, James contends the trial court erred by refusing to grant his motion for reconsideration. James alleges the trial judge applied the wrong legal standard at the first special appearance, refused to reassess his analysis, and failed to consider additional evidence.

Approximately one month after the initial hearing, the trial judge allowed further argument regarding his earlier order which granted Illinois Central's special appearance. The motion for reconsideration presented the trial judge with no new facts or issues. As a result, the trial judge did not abuse his discretion in denying the motion for reconsideration, and we overrule James's sixth point of error.

In points of error seven and eight, James argues the trial court misapplied the facts and entered erroneous conclusions of law. In previous analysis, we reviewed the pertinent facts in the record, as well as the conclusions of law based upon those facts. Conclusions of law are freely reviewable, and regardless of the lower court's analysis, this Court has found that jurisdiction over Illinois Central would not comport with standards of fair play and substantial justice. We overrule James's seventh and eighth points of error.

Finding no reversible error in the trial judge's ultimate conclusion of law that no jurisdiction exists as to Illinois Central, we affirm the order of the trial court.

ANDELL, J., dissenting.

ANDELL, Justice, dissenting.

I respectfully dissent from my learned colleagues in this case. I would hold that Illinois Central has failed to meet its burden in negating personal jurisdiction based on the theory of general jurisdiction.

The issues briefed and presented to this Court concern the trial court's power to exercise personal jurisdiction over Illinois Central. Under the facts of this case, the trial court and the Majority have found that the trial court lacks such power. I disagree. In addressing this case, the Majority has attempted to apply convenience factors into a personal jurisdiction analysis, thereby reach-

ing a forum non conveniens result through personal jurisdiction.[1] Although I do recognize the equities of such a result, the facts and relevant law dictate a different result.

### Fair Play and Substantial Justice

Once it has been determined that a nonresident defendant purposefully established minimum contacts with the forum state,[2] the contacts are evaluated in light of other factors to determine whether the assertion of personal jurisdiction comports with fair play and substantial justice. *Guardian Royal Exch. Assurance v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex.1991). In this inquiry, it is incumbent upon the defendant to present a compelling case that the presence of some consideration would render jurisdiction unreasonable. *Id.* at 231. The following factors, when appropriate, should be considered: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

The minimum contacts analysis now encompasses many of these fairness considerations, and as such, it has become less likely that the exercise of jurisdiction will fail a fair play analysis. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990). Therefore, only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *Guardian Royal Exch.*, 815 S.W.2d at 231. The present case is not one of those rare cases.

The rare cases have generally been restricted to those involving international defendants. *See, e.g., Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113–15, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987);

*Guardian Royal Exch*, 815 S.W.2d at 232–33; *Juarez v. United Parcel Service de Mexico S.A. de C.V.*, 933 S.W.2d 281, 286 (Tex. App.—Corpus Christi 1996, no writ). In these cases, the presence of an international defendant tends to be a determinative factor in finding that the exercise of personal jurisdiction would be unreasonable. The present case contains no such determinative factor.

### Discussion

The Majority states that although the burden on Illinois Central in defending this lawsuit would be minimal, all other factors indicate that personal jurisdiction over Illinois Central would be unreasonable. The Majority has attempted to make the lack of interest Texas would have in adjudicating the dispute a determinative factor in finding the exercise of jurisdiction to be unreasonable. The Majority reasons that because James's injury has no relation to Illinois Central's activities in Texas, subjecting Illinois Central to our court system would not protect our citizens from potential future actions of Illinois Central. I respectfully disagree.

This is not a case like *Asahi, Guardian Royal*, or *Juarez*. This case concerns an Illinois railroad which has substantial contacts with Texas. As indicated by the Majority's opinion, Illinois Central generates millions of dollars worth of business in Texas. In 1990, Illinois Central generated $75 million of business in Harris County. Illinois Central operates trains and tracks in Texas. Illinois Central maintains an office in Harris County which employs an agent of Illinois Central who solicits business from the citizens of Texas. In addition, Illinois Central has defended other lawsuits in Texas.

The burden on Illinois Central in defending this suit is minimal. In fact, the nature and extent of Illinois Central's contacts with Texas justify a conclusion that Illinois Central should expect to be called into our courts. *See Project Engineering USA Corp. v. Gator Hawk, Inc.*, 833 S.W.2d 716, 723

---

1. The issues presented by this case are more properly addressed through a forum non conveniens analysis, but because of the trial court decision, we will only address the personal jurisdiction issues.

2. I am in agreement with the Majority's finding that Illinois Central has sufficient minimum contacts with Texas to support jurisdiction.

(Tex.App.—Houston [1st Dist.] 1992, no writ).[3] Additionally, Texas does have an interest in adjudicating the dispute in that such litigation could affect how Illinois Central conducts its business in Texas, and how Texas is able to regulate these types of interstate activities. Finally, I would also note there are more appropriate methods for addressing cases such as this, *i.e.*, forum non conveniens.

## Conclusion

Based on the facts of this case, I would find that having to defend a lawsuit in this state based on an event that took place outside the state by a party who has so clearly availed itself of the benefits and protections offered by this state, does not offend notions of fair play and substantial justice.

Accordingly, I would hold the trial court erred in granting Illinois Central's special appearance.

---

**3.** In *Gator Hawk,* this Court stated:
> The nature and extent of appellants' contacts with Texas justify a conclusion that appellants should expect to be called to our courts. Nothing in the record indicates that litigation in a Texas court would be excessively burdensome or inconvenient to appellants. Litigation in Texas has provided both sides with benefits and protection of our laws. We hold that the exercise of jurisdiction over appellants by a Texas court did not offend traditional notions of fair play and substantial justice.

*Project Engineering USA Corp. v. Gator Hawk, Inc.,* 833 S.W.2d 716, 723 (Tex.App.—Houston [1st Dist.] 1992, no writ).