ASHDON, INC. d/b/a Impression Bridal and Emme Bridal, Inc., Appellants,

v.

GARY BROWN & ASSOCIATES, INC. and Gary Brown, Individually, Appellees.

No. 01–06–01186–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 29, 2008.

■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■

Clifford A. Lawrence Jr., Clifford A. Lawrence, P.C., Houston, TX, for Appellants.

Jimmie D. Aycock Jr. Porter & Hedges, L.L.P. Houston, TX, for Appellees.

Panel consists of Justices TAFT, KEYES, and ALCALA.

## OPINION

EVELYN V. KEYES, Justice.

In this breach of contract and conversion suit, appellants, Ashdon, Inc. d/b/a Impression Bridal and Emme Bridal, Inc. (collectively referred to as "Ashdon") challenge the trial court's order that granted the special appearance of appellees, Gary Brown & Associates, Inc. ("GBAI") and Gary Brown, individually (collectively referred to as "Brown"). In one issue on appeal, Ashdon argues that the trial court erred in granting the special appearance.

We affirm.

## Background

Ashdon is an importer and wholesaler of wedding gowns and bridesmaids' and prom dresses. Emme Bridal was incorporated in 1997 and conducts the same business as Ashdon. Brown, a resident of Florida, is the owner of GBAI, a Florida corporation with its principal place of business in Boca Raton, Florida. In 1992, Brown and GBAI started working for Ashdon[1] as independent contractors pursuant to a letter agreement. The parties agree that they signed an agreement, but the agreement produced at trial did not reflect all of the terms of the agreement. Pursuant to the agreement produced at trial, GBAI became the sales representative of Ashdon in western Pennsylvania, Ohio, Indiana, Kentucky, Michigan, Illinois, Wisconsin, Minnesota, Iowa, North Dakota, South Dakota, and portions of Missouri. Ashdon furnished promotional sales materials, including wedding dress bodices, pictures, and other sales materials, to Brown to enable him to sell the products. The evidence showed that, during the course of the employment relationship, Brown would return the promotional materials to Ashdon at various times. The evidence conflicted as to where Brown took possession of the materials and whether he returned them in person or through the mail.

On January 14, 2005, Brown's relationship with Ashdon ended, and Ashdon demanded that Brown return the promotional materials he still had in his possession. Because Brown did not return the promotional materials until May 2005, Ashdon filed suit in Houston for breach of contract and conversion, alleging that it was damaged by not having the promotional materials during the busiest part of the sales year. Brown filed an answer subject to a special appearance. His special appearance argued that he was not subject to jurisdiction in Texas because he did not have the requisite minimum contacts with Texas, he had not purposefully established minimum contacts with Texas, and the cause of action alleged by Ashdon did not arise from any specific contact by Brown or GBAI with Texas.

Brown did not testify at the special appearance hearing, but he attached an affidavit to his motion for special appearance. His affidavit stated, "The contract between GBAI and Ashdon was negotiated and executed in Florida." He further stated, "Neither GBAI nor I have ever entered into a contract in Texas or with a Texas choice of law or forum selection clause." He also stated, "Neither GBAI nor I have ever committed any torts in whole or in part in Texas." He also stated:

6. Neither GBAI nor I have ever owned, leased or possessed any real or personal property in Texas. Neither GBAI nor I have any bank accounts in Texas, nor have we filed any financing statements, borrowed any money, guaranteed any debt, or maintained any banking relationship in Texas. Neither GBAI nor I maintain any telephone listings, offices or P.O. Boxes in Texas.

In response to the allegations in Ashdon's petition, Brown averred,

11. Neither GBAI nor I took any action within Texas that gave rise to Plaintiff's cause of action. The wedding dress bodices and other promotional materials received by GBAI from Ashdon were received and maintained in Florida, or areas

---

1. Ashdon was incorporated in 2000 and is the successor corporation to Impression Bridal. Impression Bridal was incorporated in 1997.

outside of Texas, until such time that they were returned to Ashdon.

12. I have never conducted business in Texas in my individual capacity. Neither GBAI nor I have ever been engaged as a sales representative for Ashdon, or any other manufacturer in Texas. In my capacity as the President of GBAI, I did visit Texas occasionally (once or twice a year at most) for the limited purpose of attending manufacturing shows in order to view new dress designs that would be promoted during the upcoming sales season. The product distributors generally paid for flight and hotel expenses for these trips. To the extent any sales of product to customers resulted from any such show, such sales were solicited and pre-negotiated outside of Texas. Neither GBAI nor I have solicited business from any Texas customer, sent any correspondence to potential customers in Texas, or engaged in routine sales or other profit making activities in Texas.

In response to Brown's affidavit, Ashdon averred:

In 1992, Defendants entered into express and implied contracts with Impression Bridal, Inc., a Texas Corporation and the predecessor to Plaintiff Ashdon, Inc., a Texas corporation d/b/a Impression Bridal, to act as a independent sales representative for Impression. Plaintiff Ashdon, Inc. d/b/a Impression Bridal was formed in 1999 to continue the ongoing business of Impression Bridal, and Defendants continued selling the Impression products for Ashdon pursuant to express and implied contracts between Ashdon and Defendants entered into and performable in whole or in part in Texas. In 1997, De-

fendants entered into express and implied contracts with Emme Bridal, Inc., to act as independent sales representative for Emme. These contracts between Plaintiffs and Defendants were entered into in Texas and were performable in whole or in part in Texas by both Plaintiffs and Defendants. Defendants continued to work under their express and implied contracts with both Defendants until the contracts and business relationships between Plaintiffs and Defendants were terminated on January 14, 2005. During the many years during which Defendants' contracts with Plaintiffs continued in force, Defendants were in contact with Plaintiffs in Texas by phone, e-mail, fax, or mail on a weekly basis concerning performance of those contracts, and traveled to Texas for business purposes related to and arising out of those contracts in nearly every year since 1992 until the contracts were terminated on January 14, 2005. Furthermore, Defendants were sent commission checks by Plaintiffs from Texas on a monthly basis and expense or draw checks on a more regular basis. Pursuant to and in order to carry out the express and implied independent sales representative contracts entered into between Plaintiffs and Defendants, Plaintiffs furnished to Defendants apparel samples for use by Defendants in selling Plaintiffs' products, including wedding dress bodices and pictures to be used as sales tools in performance of the said express and implied independent sales representative contracts. When Defendants relationships with Plaintiffs under the express and implied contracts as described herein were terminated, Plaintiffs demanded return of their bodices and pictures, which had previously been supplied to Defendants. Defendants intentionally and with malice refused to return the bodices and pictures owned

by Plaintiffs upon demand in violation of their contracts with Plaintiffs, and converted Plaintiffs' property for their own use and purposes to inflict harm on Plaintiffs during the peak of Plaintiffs' spring sales season for their fall apparel lines. Plaintiffs' bodices and pictures as described herein were not returned to Plaintiffs until May 13, 2005, by which time the said sales season was almost over. The said property converted by Plaintiffs was supplied to Defendants pursuant to the express and implied contracts between Plaintiffs and Defendants as described herein, and Defendants' breach of contract and conversion of the said property arises out of and relates to those contracts and Defendants' contacts with Texas.

At the special appearance hearing, Nick Yeh, the owner of Ashdon, testified that he first spoke with Brown in 1992. Nick disagreed, however, that the 1992 contract (the "1992 contract") attached to Brown's special appearance was the final agreement. He stated that he signed a letter agreement in Texas and faxed it back to Florida. Nick also testified that he had never seen a copy of the 1992 contract that was signed by Brown. Nick testified that, in a Florida lawsuit between the same parties, Brown testified that he signed the employment agreement in Nick's Texas office. Nick also disagreed with the portion of Brown's affidavit which stated that their agreement was negotiated and executed in Florida.

Nick testified that, after hiring Brown in 1992, he furnished samples, pictures, and catalogs for Brown's use. When he gave these items to Brown, Nick told Brown that he had to return the promotional materials when Nick asked for them and Brown agreed. During Brown's employment with Ashdon, Nick furnished samples, bodices, pictures, and other sales tools to Brown for use in selling products. In the past, when Nick had asked for these items back, Brown had always given them back. Nick testified that when Brown was fired on January 14, 2005, Nick demanded that Brown return the items that had been loaned to him, but the items were not returned. It was not until Nick filed a lawsuit that Brown returned the promotional materials.

Nick testified that Brown picked up the bodices, samples, and pictures in Texas, but he also explained that "after the sales meeting, we will-the bodice in the picture will be ready and we will ship them to him." He stated that some of the bodices, pictures, and other sales materials that Brown refused to return were picked up by Brown in Texas. Nick testified that Brown probably picked up the sales materials twice a year in Texas during sales meetings in January and July.

Nick testified that Brown also had to attend and did attend two sales meetings a year in Texas between 1992 and January 14, 2005. He testified, however, that between those dates, there may have been only one sales meeting in a given year, but it would not have been many of the years. Nick also testified that Brown would call him

> to discuss sales strategy, customer service, customer problems, the way we could do business, and Mr. Brown would regularly call my accounting department ... when a customer has a problem regarding the accounts receivable. Mr. Brown would also call a lot of my managers to discuss the day-to-day operation, any kind of customer service that he would have—that a customer would have.

Nick testified that the phone calls happened on a weekly basis between 1992 and January 14, 2005, when Brown was fired.

Brown also received expense, or draw, checks from Ashdon on a weekly basis between 1992 up until the time he was fired. Nick testified that Brown was mailed checks weekly that were drawn on Texas banks. Nick testified that sending the checks was part of the performance of the contract.

Nick also testified that Brown attended a preview sales event in 2004 in Texas. Each sales representative had to call his customer and invite the customer into Texas where they were having a prom sales event. Nick stated that "they"[2] flew in at their own expense and that they paid for their own air and hotel. Nick testified that he saw Brown write up orders at the sales event for out-of-state customers he had invited to Texas. Nick agreed with the trial court that Brown brought his own customers to Texas to buy dresses.

Nick testified that Ashdon was injured by Brown's acts because,

[E]very season we have to produce a picture of the bodice, which is half of the wedding gown, because it is too much trouble for the salesman to carry around wedding gowns into the store. So, we only make half a dress for them to carry to the store and see. They show them by picture, show this [b]ridal shop a picture and a bodice, sell the merchandise. If they don't have the pictures of all the dresses, then my next new group of sales people would not be able to sell them.

Nick testified that because of his inability to furnish those bodices, pictures, and other sales materials that Brown refused to return Ashdon suffered damages of at least $45,000.

Mike Yeh owns Emme Bridal. Mike testified that his company was formed in 1997 and that Brown also served as an independent contractor for Emme Bridal. He recalled that Brown made weekly telephone calls and that he sent weekly faxes and e-mails to Emme Bridal. Mike sent Brown weekly draw checks and commission checks written in Texas and drawn on Texas banks. Emme Bridal also gave Brown photos, samples, pictures and other sales materials. Mike testified, like Nick, that Brown would return the promotional materials when he asked for them. Mike also testified that when his brother fired Brown, Nick told Brown to return all of the materials, but Brown did not. Mike testified that some of the sales materials that Brown refused to return were picked up by Brown while attending sales meetings in Texas. With respect to Emme Bridal, Brown was required to attend and did attend "an average of about two sales meetings or sales promotion events in Texas...."

At the plea to the jurisdiction hearing, the trial court asked whether the case had been tried in a sister jurisdiction. Ashdon's and Emme Bridal's counsel stated that a case not involving the issue in this case had been tried in Florida. Brown's attorney stated that the trial court would need to get a copy of the transcript of the Florida litigation.[3] It was indicated that Brown had sued Ashdon in Florida after the relationship fell apart. Ashdon's counsel said that it filed suit in Texas first and then Brown filed suit in Florida. Brown's counsel stated that the exact issue of damages was raised in Florida. Brown stated that, in the Florida litigation, a verdict was returned in favor of GBAI showing that Ashdon had breached the contract. Mike

---

**2.** The record is unclear whether Nick was referring to distributors, representatives, or customers.

**3.** The record does not contain a transcript from the Florida trial.

agreed that he was involved in the Florida litigation, but he stated that Brown did not get all of the damages sought from Emme Bridal. On December 21, 2006, the trial court granted Brown's special appearance and this appeal ensued.

## Personal Jurisdiction

In its sole issue on appeal, Ashdon argues that the trial court erred when it granted Brown's special appearance.

■ Whether a court has personal jurisdiction over a defendant is a question of law subject to de novo review. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002); *Glattly v. CMS Viron Corp.,* 177 S.W.3d 438, 445 (Tex.App.-Houston [1st Dist.] 2005, no pet.). The trial court, however, must frequently resolve questions of fact before deciding the jurisdictional question. *BMC Software,* 83 S.W.3d at 794.

■ If the trial court does not issue findings of fact and conclusions of law, as here, "all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software,* 83 S.W.3d at 795. In other words, if the trial court does not issue findings of fact, a reviewing court should presume that the trial court resolved all factual disputes in favor of its judgment. *Tri–State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.,* 184 S.W.3d 242, 246 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (citing *American Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex.2002)). These findings are not conclusive when the appellate record includes both the reporter's and clerk's records, and they may be challenged for legal and factual sufficiency on appeal. *Id.*

To the extent that the underlying facts are undisputed, however, we conduct a de novo review. *Glattly,* 177 S.W.3d at 445.

■ Two requirements must be met before a Texas court can exercise personal jurisdiction over a nonresident defendant. First, the Texas long-arm statute must authorize the exercise of jurisdiction, and second, the exercise of jurisdiction must be consistent with the guarantees of due process. *Coleman,* 83 S.W.3d at 806; *Tri–State,* 184 S.W.3d at 248.

■ The long-arm statute permits Texas courts to exercise personal jurisdiction over a nonresident[4] defendant that "does business" in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 1997); *see PHC–Minden, L.P. v. Kimberly–Clark Corp.,* 235 S.W.3d 163, 166 (Tex.2007). The statute lists three activities that constitute "doing business": (1) contracting with a Texas resident when either party is to perform the contract in whole or in part in Texas; (2) committing a tort in whole or in part in Texas; and (3) recruiting Texas residents for employment inside or outside of Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042. This list is not exclusive,[5] however, and the statute's "doing business" requirement is limited only by the requirements of federal due process. *Koll Real Estate Group, Inc. v. Purseley,* 127 S.W.3d 142, 146 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (citing *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990)).

■ Because the language of the long-arm statute is broad, its requirements are considered satisfied if the exercise of personal jurisdiction comports with federal

---

**4.** A "nonresident" includes "an individual who is not a resident of [Texas]" and "a foreign corporation, joint-stock company, association, or partnership." TEX. CIV. PRAC. & REM.CODE ANN. § 17.041 (Vernon 1997).

**5.** *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex.2002).

due process limitations. *CSR, Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996). In practice, the two conditions are combined into one requirement of due process. *Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238, 247 (Tex.App.-Houston [1st Dist.] 2004, pet. denied). Thus, the true determinative inquiry is one of federal constitutional due process. *See id.; see also Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991).

With respect to personal jurisdiction, federal due process requires two things. First, the nonresident defendant must have purposefully established such minimum contacts with the forum state that the defendant could reasonably anticipate being sued there. *Glattly*, 177 S.W.3d at 446 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985)). Second, if the nonresident defendant has purposefully established minimum contacts with the forum, the exercise of personal jurisdiction must also comport with traditional notions of fair play and substantial justice. *Id.* at 447 (citing *Burger King*, 471 U.S. at 475–76, 105 S.Ct. at 2183–84). As to fairness, the defendant bears the burden of presenting a "compelling case" that exercising jurisdiction over him would not be fair and just. *See id.* at 450. Only in rare cases, however, will a Texas court's exercise of personal jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *Guardian Royal Exch. Assurance*, 815 S.W.2d at 231.

A nonresident establishes minimum contacts with Texas by purposefully availing itself of the privileges and benefits inherent in conducting business in the state. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex.

2005); *Koll*, 127 S.W.3d at 146. The touchstone of jurisdictional due process is "purposeful availment," i.e., "it is essential in each case that there be some act by which the *defendant purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Michiana*, 168 S.W.3d at 784 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)) (emphasis in *Michiana*). Three aspects of the requirement are important in this case, as in *Michiana*: (1) only the defendant's contacts with the forum count, not the unilateral activity of another party or person; (2) the acts relied on to establish jurisdiction must be "purposeful" rather than fortuitous; and (3) the defendant must seek some benefit, advantage, or profit by "availing" itself, or himself, of the jurisdiction. *Id.* at 785. It is the quality and nature of the defendant's contacts, rather than their number, that is important to the minimum-contacts analysis. *Trigeant Holdings, Ltd. v. Jones*, 183 S.W.3d 717, 725 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). Random, fortuitous, or attenuated acts, or the unilateral acts of a third party, are not sufficient to confer personal jurisdiction. *Id.* Although not determinative, foreseeability is an important consideration in deciding whether a nonresident defendant has purposefully established minimum contacts. *Glattly*, 177 S.W.3d at 446–47. In confining its activities to another forum, "a nonresident may purposefully avoid a particular jurisdiction by structuring its transactions so as neither to profit from the forum's laws nor be subject to its jurisdiction." *Michiana*, 168 S.W.3d at 785.

The minimum contacts element of due process is further divided into specific and general personal jurisdiction. *Id.* at 447. A court may exercise specific juris-

diction over a nonresident defendant if his alleged liability arises from, or is related to, an activity conducted within the forum. *Id.* (citing *CSR*, 925 S.W.2d at 595). For the court to have specific jurisdiction, the nonresident defendant must have established minimum contacts by purposefully availing itself of the privilege of conducting activities in Texas and there must be a substantial connection between those contacts and the operative facts of the litigation. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 576, 585 (Tex. 2007); *Shell Compañia Argentina de Petroleo, S.A. v. Reef Exploration, Inc.*, 84 S.W.3d 830, 837 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). We focus our analysis on the relationship among the defendant, the forum, and the litigation. *Id.*

■ A court may exercise general jurisdiction over a nonresident defendant if the defendant's contacts with the forum state are continuous and systematic, even if the cause of action did not arise from or relate to the defendant's contacts with the forum. *Glattly*, 177 S.W.3d at 447. When general jurisdiction is asserted, the minimum contacts analysis is more demanding and requires a showing that the defendant conducted "substantial activities" in the forum state. *CSR*, 925 S.W.2d at 595.

■ The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *BMC Software*, 83 S.W.3d at 793. A nonresident defendant challenging the court's exercise of personal jurisdiction through a special appearance carries the burden of negating all grounds for personal jurisdiction alleged by the plaintiff. *Id.; Glattly*, 177 S.W.3d at 446.

### Minimum Contacts

### General Jurisdiction

Ashdon relies on the following contacts to establish continuous and systematic con-

tacts with Texas as required to establish general jurisdiction;

(1) Gary Brown and/or GBAI was an independent sales representative for Impression Bridal, Inc. and Ashdon, Inc., Texas corporations since 1992.

(2) Brown and/or GBAI was an independent sales representative for Emme Bridal, Inc. since 1997.

(3) Brown was an independent sales representative for Amy Lee Bridal, a company located in Houston, Texas, for three to four years in the late 1990's.

(4) Brown attended sales meetings at Amy Lee Bridal in Houston, Texas.

(5) Between 1992 and 2003, Brown attended about twenty sales meetings in Texas with Ashdon, Inc. and Emme Bridal, Inc.

(6) Between 1992 and 2005, Brown had regular weekly communications (in the form of faxes, correspondence, orders, and emails) with Nick Yeh and Mike Yeh who were located in Texas.

(7) Between 1992 and 2005, Brown would initiate phone calls to Nick Yeh to discuss sales strategy and other matters.

(8) Brown would regularly call the accounting departments and managers at Ashdon, Inc. and Emme Bridal, Inc. on a weekly basis.

(9) Brown received expense and draw checks on a weekly basis from Ashdon, Inc. and Emme Bridal, Inc.

(10) Brown attended a preview sales meeting in Houston, Texas in 2004 and wrote orders for customers from his sales territories.

(11) Brown attended a sales promotion meeting in Texas in 2003.

(12) Brown has testified in another case that he signed the contract with Ashdon, Inc. d/b/a Impression Bridal in Houston, Texas.

Brown responds that GBAI does not advertise in Texas, has no physical presence in Texas, and performs all of its business services outside of Texas.

■ Texas courts often consider "the lack of an office, agent, or the solicitation of business as determinative to the exercise" of general jurisdiction. *James v. Ill. Cent. R.R.*, 965 S.W.2d 594, 598 n. 1 (Tex. App.-Houston [1st Dist.] 1998, no pet.) (citing *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 772–74 (Tex.1995) (finding no general jurisdiction when defendant never maintained office or other place of business in Texas and had no agents in Texas)); *Int'l Turbine Serv., Inc. v. Lovitt*, 881 S.W.2d 805, 810 (Tex.App.-Fort Worth 1994, writ denied) (finding no general jurisdiction when defendant did not have office, employee, or market business within Texas); *Clark v. Noyes*, 871 S.W.2d 508, 518–20 (Tex.App.-Dallas 1994, no writ) (finding no general jurisdiction over individual who had no business interests in Texas); *Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 634–35 (Tex. App.-Dallas 1993, writ denied) (finding no general jurisdiction over defendant that did not maintain place of business in Texas, had no employees from Texas, and did not solicit business in Texas).

GBAI does not maintain an office, agent, or clients in the State of Texas. The facts that GBAI is not a Texas corporation, does not advertise in Texas, has no physical presence in Texas, and performs all of its business services outside of Texas all support a lack of minimum contacts. *See CSR*, 925 S.W.2d at 595 (nonresident defendant did not have continuous and systematic contacts with Texas where defendant: had no offices, employees, or bank accounts in Texas; had not solicited business in Texas; never owned property and never paid taxes in Texas; and never entered into a contract in Texas).

■ The record does reflect that, on behalf of GBAI, Brown contracted with Ashdon and Emme Bridal and worked for a third Texas company, Amy Lee Bridal. However, merely contracting with a Texas company does not necessarily constitute "purposeful availment" for jurisdictional purposes. *See Burger King Corp.*, 471 U.S. at 478, 105 S.Ct. at 2185; *Counter Intelligence, Inc. v. Calypso Waterjet Sys., Inc.*, 216 S.W.3d 512, 518 (Tex.App.-Dallas 2007, pet. denied). Generally, a contract calling for performance outside of Texas does not subject a party to jurisdiction here. *See Coleman*, 83 S.W.3d at 808.

Brown's remaining contacts are attending meetings in Texas, communicating with Ashdon via e-mail, phone, and fax, and receiving checks from Texas. We address each in turn.

■ Brown's travel to attend sales meetings does not satisfy general jurisdictional principles because Brown did not choose to travel to Texas. *See Moki Mac*, 221 S.W.3d at 575 (stating that, for purposeful availment, "only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person"). Although Brown attended two meetings at most per year from 1992 to 2005, a 13–year period, these contacts were at the insistence of the appellants directing him to Texas for meetings. We are not concerned with actions that are based on the unilateral acts of a third party. *See id.* Moreover, two or three visits a year do not rise to the level of continuous and systematic contacts. *See Moni Pulo Ltd. v. Trutec Oil & Gas, Inc.*, 130 S.W.3d 170, 179 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) ("[I]t is diffi-

cult to say that two or thee visits a year are continuous and systematic."); *Coleman*, 83 S.W.3d at 809 (attendance at five Texas conferences did not support the exercise of personal jurisdiction); *Preussag Aktiengesellschaft v. Coleman*, 16 S.W.3d 110, 124 (Tex.App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.) ("Occasional travel to Texas is insufficient by itself to establish continuous and systematic contact.").

In addition to attending sales meetings, during the 13–year employment relationship Brown attended two sales events in Texas. During these visits, Brown was required to bring customers from outside of Texas that had a prearranged agreement to purchase items at the sales events. The evidence indicates that Brown neither unilaterally came to Texas, nor ever sold products to Texas customers, nor solicited Texas customers. Instead, the evidence shows that Brown's sales territory was western Pennsylvania, Ohio, Indiana, Kentucky, Michigan, Illinois, Wisconsin, Minnesota, Iowa, North Dakota, South Dakota, and portions of Missouri. Brown's attendance at two sales meetings in Texas does not support the Texas courts' exercise of personal jurisdiction over him. *See Coleman*, 83 S.W.3d at 809; *Preussag*, 16 S.W.3d at 124.

▮ Ashdon also relies on the fact that it sent Brown checks that were drawn on Texas banks. Ashdon again tries to focus on its own acts instead of focusing on Brown's contacts with Texas. Here, Brown's act of accepting checks from Ashdon does not satisfy the minimum contacts test. *See IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597–98 (Tex.2007) (per curiam) (contracting with Texas resident and accepting account initiation fee not sufficient to satisfy minimum contacts test where services were to be performed in California).

Finally, Ashdon asserts that Brown admitted in the Florida lawsuit that he signed the employment agreement with Ashdon in Texas, while Brown's affidavit avers that the contract was executed in Florida. The trial court heard conflicting evidence on where the contract was executed, and this conflict was resolved in favor of Brown. *See Puri v. Mansukhani*, 973 S.W.2d 701, 710–11 (Tex. App.-Houston [14th Dist.] 1998, no pet.) (holding that trial court, as sole judge of credibility, could resolve conflicting evidence); *see also Navasota Res., Ltd. v. Heep Petroleum, Inc.*, 212 S.W.3d 463, 469 (Tex.App.-Austin 2006, no pet.) (refusing to disturb trial court's resolution of evidentiary conflicts and issues of credibility in special appearance context). We decline to substitute our judgment for that of the trial court.

Under these circumstances, we must conclude that Brown's contacts with Texas were not continuous and systematic. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984) (holding there was no general jurisdiction even though defendant sent its chief executive officer to Texas for a contract-negotiating session, accepted into its bank account checks drawn on a bank in Texas, purchased $4 million of goods and equipment from a company in Texas, and sent employees to Texas for training and technical consultation); *PHC–Minden*, 235 S.W.3d at 170–71 (holding that isolated trips to Texas, more than $1,500,000 in purchases from Texas vendors, and two contracts with Texas entities were not substantial enough to support general jurisdiction); *CSR*, 925 S.W.2d at 595 (concluding that there was no general jurisdiction and stating there must be an indication that defendant intended to serve Texas market before personal jurisdiction can be found); *Michel v. Rocket Eng'g Corp.*, 45 S.W.3d 658, 671–82

(Tex.App.-Fort Worth 2001, no pet.) (holding record did not support general jurisdiction because it did not show that defendant created general business presence in Texas through continuing and systematic activities).

Ashdon relies on *Project Engineering USA Corp. v. Gator Hawk, Inc.*, as support for the Texas courts' maintaining general jurisdiction over Brown. *See* 833 S.W.2d 716 (Tex.App.-Houston [1st Dist.] 1992, no writ). There, Gator Hawk sued a nonresident California defendant, Project Engineering ("Project"), and Less Goetting, the president and sole owner of Project, in Texas. *Id.* at 719. The evidence at the special appearance hearing established that the nonresident defendant served as a distributor in California for three separate Texas companies, none of which was a party to the underlying lawsuit. The contract with one of these Texas companies contained a forum-selection clause providing Texas as the proper forum for any litigation between those parties. *Id.* at 720.

In considering all the evidence from the special appearance hearing, we held that the nonresident defendant purposefully established minimum contacts in Texas because (1) Project had been a sales representative or distributor in California for three different Texas companies during the few years prior to suit; (2) Goetting, as president of Project, had visited Texas in connection with its contracts with these Texas companies on at least four different occasions; (3) Project received commission checks from the Texas companies; (4) a written contract with one of the Texas companies was signed in Houston by Goetting; and the agreement specified that Texas law was controlling and that any litigation under the contract was to be brought in Houston, Texas. *Id.* at 722. We further stated that it could reasonably

be inferred that, in furtherance of its representation efforts in California for the three Texas companies, the nonresident defendant "necessarily had to keep in regular communication with the Texas companies it represented." *Id.*

■ Here, the record does not indicate that any of the contracts at issue have choice of law or forum selection clauses; the trial court found that the contract Brown and GBAI are alleged to have breached was signed out of state; Brown's visits to Texas were occasional and were all at the unilateral instigation of Ashdon; and the fact that Brown was paid by checks drawn on Texas banks is insufficient, standing alone, to satisfy the minimum contacts test. *See IRA Resources,* 221 S.W.3d at 597–98. Therefore, we conclude that *Gator Hawk* is distinguishable.

After considering all of Brown's contacts with Texas, we conclude that Brown has not established continuous and systematic contacts that subject him to general jurisdiction in Texas.

*Specific Jurisdiction*

In his motion for special appearance, Brown argued that he was not subject to specific jurisdiction because "the promotional materials complained of by [Ashdon] were received and maintained in Florida, or outside of Texas, until they were returned to Ashdon." In its response to the special appearance motion, Ashdon alleged "[t]he said property converted by [Brown] was supplied to [Brown] pursuant to the express and implied contracts between [Ashdon] and [Brown] as described herein, and [Brown's] breach of contract and conversion of the said property arises out of and relates to those contracts and Defendants' contacts with Texas." Ashdon does not explain how the operative facts of the litigation arise out of and relate to Brown's contacts with Texas.

■ For the court to have specific jurisdiction, the nonresident defendant must have established minimum contacts by purposefully availing itself of the privilege of conducting activities in Texas and there must be a substantial connection between those contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585. Under "purposeful availment," only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. *Michiana*, 168 S.W.3d at 784–85. A trial court "frequently must resolve questions of fact before deciding the [personal] jurisdiction question." *BMC Software*, 83 S.W.3d at 794. In doing so, it is the sole province of the trial court to determine the credibility of the witnesses and to resolve conflicts in the evidence. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796–97 (Tex. 1951); *Huynh v. Nguyen*, 180 S.W.3d 608, 615 (Tex.App.-Houston [14th Dist.] 2005, no pet.); *Puri*, 973 S.W.2d at 711.

■ Ashdon sued Brown for breach of contract in the conversion of promotional materials that were supplied to Brown to sell wedding and prom dresses. Thus, for there to be specific jurisdiction over Brown the operative facts of Ashdon's breach of contract and conversion claims must arise out of and relate to Brown's contacts with Texas. Conversion is the wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex.1971). To establish a claim for conversion, a plaintiff must prove that (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights

as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Burns v. Rochon*, 190 S.W.3d 263, 268 (Tex.App.-Houston [1st Dist.] 2006, no pet.).

In his affidavit, Brown stated, in relevant part,

10. Neither GBAI nor I have ever committed any torts in whole or in part in Texas. Neither GBAI nor I have ever recruited Texas residents, directly or through an intermediary located in Texas, for employment inside or outside of Texas.

11. Neither GBAI nor I took any action within Texas that gave rise to Plaintiff's cause of action. The wedding dress bodices and other promotional materials received by GBAI from Ashdon were received and maintained in Florida, or areas outside of Texas, until such time that they were returned to Ashdon.

In response to Brown's affidavit, Ashdon stated,

... Pursuant to and in order to carry out the express and implied independent sales representative contracts entered into between Plaintiffs and Defendants, Plaintiffs furnished to Defendants apparel samples for use by Defendants in selling Plaintiffs' products, including wedding dress bodices and pictures to be used as sales tools in performance of the said express and implied independent sales representative contracts. When Defendants relationships with Plaintiffs under the express and implied contracts as described herein were terminated, Plaintiffs demanded return of their bodices and pictures, which had previously been supplied to Defendants. Defendants intentionally and with malice refused to return the bodices and pic-

tures owned by Plaintiffs upon demand in violation of their contracts with Plaintiffs, and converted Plaintiffs' property for their own use and purposes to inflict harm on Plaintiffs during the peak of Plaintiffs' spring sales season for their fall apparel lines. Plaintiffs' bodices and pictures as described herein were not returned to Plaintiffs until May 13, 2005, by which time the said sales season was almost over. The said property converted by Plaintiffs was supplied to Defendants pursuant to the express and implied contracts between Plaintiffs and Defendants as described herein, and Defendants' breach of contract and conversion of the said property arises out of and relates to those contracts and Defendants' contacts with Texas.

At the special appearance hearing, both Nick and Mike testified that Brown picked up promotional materials in Texas and did not return them. Nick specifically stated that some of the materials that Brown did not return were picked up in Texas. The trial court also had before it the testimony of Nick and Mike and Brown's affidavit. The trial court implicitly resolved the conflicts in the evidence against Ashdon and in favor of Brown by granting the special appearance. Because sufficient evidence supports the trial court's implied finding that Brown did not take possession of the property in Texas, we decline to substitute our judgment for that of the trial court. *See Puri*, 973 S.W.2d at 710–11.

■ Because the trial court resolved the location of where Brown took possession of the property in his favor, Ashdon cannot show that there is a substantial connection between the operative facts of the litigation and Brown's contacts with Texas. Brown's alleged act of converting the property does not have a substantial relationship with his sales meetings, sales events, or communications with Ashdon in

Texas. Also, because the trial court implicitly found that Brown took possession of the promotional materials in Florida, Ashdon cannot show that Brown's alleged liability arises from, or is related to, an activity conducted within the forum. Accordingly, we hold that Brown is not subject to specific jurisdiction in Texas.

Ashdon relies on *Small v. Small*, 216 S.W.3d 872 (Tex.App.-Beaumont 2007, pet. denied) to support his specific jurisdiction argument. In *Small*, residents of Texas provided the defendant, the fiancé of their son, a diamond for an engagement ring. The diamond was set in the ring in Texas and the parties subsequently married. A few years later, the defendant filed for divorce. Upon hearing of the divorce, the plaintiffs asked for the diamond back, and the defendant refused. The Smalls sued the defendant in Texas alleging conversion and theft. The defendant filed a special appearance, which the trial court granted. The court of appeals reversed, holding, "[T]he relationship between the parties upon the diamond's transfer to [defendant] arose in Texas. By coming to Texas to get tangible personal property owned by Texas residents, [defendant] purposefully availed herself of Texas law to protect whatever interest she had in the diamond upon its transfer." 216 S.W.3d at 878.

The facts here are distinguishable from the facts in *Small*. Brown did not purposefully avail himself of the laws of Texas by coming to Texas to obtain personal property for himself. Brown was summoned by Ashdon for sales meetings in Texas, where he allegedly picked up promotional materials to show to clients in other states. The materials were maintained by Brown in Florida. The parties do not agree on where Brown took possession of the alleged converted property. Ashdon contends that Brown took possession of the property in Texas, while Brown asserts in his affidavit that he received the

property in Florida. The trial court, however, resolved this issue in favor of Ashdon. Thus, we find that *Small* is inapplicable.

### Fair Play and Substantial Justice

■ Moreover, even if Brown had sufficient minimum contacts to support jurisdiction over him in Texas, the evidence would still have to show that maintaining jurisdiction over Brown comports with fair play and substantial justice. *See Glattly*, 177 S.W.3d at 446 (citing *Burger King*, 471 U.S. at 475–76, 105 S.Ct. at 2183–84). Here, we cannot conclude that it does. Once it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state, the contacts are evaluated in light of other factors to determine whether the assertion of personal jurisdiction comports with fair play and substantial justice. *Guardian Royal Exch.*, 815 S.W.2d at 228. In this inquiry, it is incumbent upon the defendant to present a compelling case that the presence of some consideration would render jurisdiction unreasonable. *Id.* at 231. The following factors, when appropriate, should be considered: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

Only in rare instances will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *Guardian Royal Exch.*, 815 S.W.2d at 231. This is true because the minimum contacts analysis encompasses so many considerations of fairness. *Schlobohm*, 784 S.W.2d at 357–358.

■ Here, Brown points out that he is a resident of Florida and that his corporation does business in Florida. He also points out that all of his employees reside in Florida and that defending the suit in Texas would cause a hardship. Testimony presented during the special appearance hearing showed that the parties have already litigated a lawsuit in Florida regarding a breach of the employment contract between Brown and Ashdon. Thus, the interstate judicial system would benefit from trying this case in the same locale as the first suit to provide better efficiency. Also, because the property was allegedly converted in Florida, Texas has less of an interest in resolving this dispute that originates from actions in Florida. We conclude that maintaining jurisdiction over Brown would offend traditional notions of fair play and substantial justice.

We overrule Ashdon's sole issue on appeal.

### Conclusion

We affirm the order of the trial court that granted appellees' motion for special appearance.