Opinion issued
September 22, 2011.

 



In
The

Court of
Appeals

For
The

First District
of Texas

————————————

NO. 01-10-00416-CV

———————————

Leonard Willis and Len Willis d/b/a A-Z Service
Center,
Appellants

V.

Kirk
A. Smith,
Appellee



 



 

On Appeal from the County
Court at Law No. 3 and Probate Court

Brazoria County, Texas



Trial
Court Case No. CI042421

 



 

 

MEMORANDUM
OPINION

 

          Leonard
Willis and Len Willis, doing business as A-Z Service Center, appeal the trial
court’s judgment.  Kirk A. Smith brought
suit against the Willises for conversion of his 2002 Dodge pickup truck.  After a bench trial, the trial court awarded
damages to Smith for conversion of his truck, but offset the amount by the cost
of repairs made to the truck by the Willises. 
The trial court rendered judgment in favor of Smith for $584.74 in
damages, return of the truck, attorney’s fees of $3,000.00, and costs.  In their sole issue in this appeal, the
Willises contend that the evidence is factually insufficient to show that they
converted the truck.  We affirm.

Background

          Smith
and Len Willis met while at a rehabilitation center and became friends.  Smith told Len about the problems he was
having with his 2002 Dodge truck.  Len, a
mechanic, told Smith that it sounded like the diesel fuel injection pump had
failed.  In November 2007, after both men
had left rehabilitation, Smith towed the truck to A-Z Service Center, the shop
Len ran and that was owned by his father, Leonard.  Smith and the Willises presented sharply
contrasting stories of what happened next.

          Smith
testified that he and a friend towed the truck to the shop for Len to diagnose
and give him an estimate for any repairs. 
He thought that there would be no charge because he and Len were
friends.  He stated that the shop was
closed and he left the keys to the truck with the manager of the motel next
door, which was also owned by Leonard. 
He did not meet or speak to anyone else. 
He denied giving any form of consent to Len to perform the repairs.

          Len,
on the other hand, testified that he and a friend met Smith and Smith’s friend
at the shop.  The shop was closed that
day and an alarm was active, so they did not go into the shop.  Len testified that he told Smith that his
father might be able to finance the repairs. 
According to Len, Smith told him that if Leonard would finance the
repairs to go ahead and perform the repairs. 
Len’s friend testified that he heard the conversation and that Smith
consented to the repairs if Leonard would finance the cost of the repairs.  Len further testified that his father agreed
to finance the costs of the repairs because Smith was Len’s friend.  Len, therefore, made the repairs.  In addition to replacing the fuel injection
pump, he replaced the supply pump, and, determining the pump problems came from
water in the fuel tank, he removed the fuel tank and cleaned it and flushed the
fuel lines.  The total cost of the
repairs was $5,382.26 for parts and labor. 


          The
parties also tell differing versions of what happened next.  According to Smith, he left the truck so that
Len could make an estimate of the repairs that needed to be done.         
A few days after dropping the truck off, he was supposed to meet Len to
pick up the truck, but “[t]hat didn’t happen.” 
A few months later, Smith called Len, who was working out of state.  Smith was unable to arrange a time to pick up
the truck.  Len would not tell him where
the truck was being stored. 

          Smith’s
sister Melissa and her husband Paul began trying to get in touch with Len
concerning the truck in August 2008. 
Both testified that he rarely answered his phone.  When they did speak with him, he told them he
was out of state for work and would contact them in a few weeks when he was
back in Texas.  He never called them back.  Melissa and Paul also testified that Len told
them about $1,200.00 was owed for the repairs on the truck.  Paul additionally testified that, after he
received notice of the mechanic’s lien in March 2009, he spoke to Leonard who
confirmed the $5,400.00 amount showing on the lien and asserted he could claim
storage fees that would bring the amount up to $10,000.00.  

          Len
testified that, after he completed the repairs, he attempted to contact Smith
for eight months.  When he called Smith’s
cellular telephone number, he would either get voicemail or “it was like there
was nothing there.”  Len estimated he
called Smith “20 to 30 times” and left messages “a couple of times.”  Len also stated that he never called Melissa
or Paul back but explained that he did not want to share information about
Smith’s truck with “in-laws.” 

          In
March 2009, the Willises asserted a mechanic’s lien on the truck in the amount
of $5,400.00.  This prompted the phone
call from Paul to Leonard mentioned above. 
After he spoke with Leonard about the lien, Paul became concerned and
contacted Smith’s attorney, who sent a demand letter and later filed this suit.

          After
hearing the evidence, the trial court found Smith had proved the elements of
conversion.  The trial court also found
the mechanic’s lien was not valid.  The
trial court found damages for Smith in the amount of his monthly payments on
the truck from December of 2007 until the time of trial (less a period when Smith
was incarcerated) for a total of $5,967.00. 
The trial court also found that the Willises “mitigated their damages”
by repairing the truck and ordered Smith’s damages reduced by the amount of
parts and labor on the repairs, $5,382.26. 
The trial court rendered judgment on the balance of $584.74, as well as
costs of court and $3,000.00 for attorney’s fees.  

Conversion

          In
their sole issue, the Willises contend that the evidence is factually
insufficient to support a finding that they converted the truck.  

          “In reviewing
a challenge to the factual sufficiency of the evidence, we must consider and
weigh all the evidence and should set aside the judgment only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.”  Esse v. Empire Energy III, Ltd., 333 S.W.3d 166, 177 (Tex. App.—Houston
[1st Dist.] 2010, pet. denied).  “In considering and weighing the
evidence, however, we must defer to the factfinder as final determiner of the
credibility of witnesses and the weight to give their testimony.”  C.M.
Asfahl Agency v. Tensor, Inc., 135 S.W.3d 768, 797 (Tex. App.—Houston [1st
Dist.] 2004, no pet.).  As
the factfinder, the trial court may believe one witness and disbelieve another and resolve
inconsistencies in any testimony.  See Dyer v. Cotton, 333 S.W.3d 703,
709 (Tex. App.—Houston [1st Dist.] 2010, no pet.); see also Esse, 333
S.W.3d at 177 (stating that “trial court acts as fact-finder in a bench trial
and is the sole judge of the credibility of the witnesses”).

          To establish a claim for
conversion, a plaintiff must prove the following elements: (1) the plaintiff
owned or had possession of the property or entitlement to possession; (2) the
defendant unlawfully and without authorization assumed and exercised control
over the property to the exclusion of, or inconsistent with, the plaintiff’s
rights as an owner; (3) the plaintiff demanded return of the property; and (4)
the defendant refused to return the property. 
Ashdon, Inc. d/b/a Impression
Bridal v. Gary Brown & Assocs., Inc., 260 S.W.3d 101, 116 (Tex. App.—Houston
[1st Dist.] 2008, no pet.).   The Willises
challenge whether Smith proved he had a right of possession of the truck.  Specifically, the Willises assert that Smith
consented to the repairs of the truck and, therefore, they had a valid lien
that entitled them to possession of the truck.

          The Willises
rely on Len’s testimony that is corroborated by his friend’s testimony.  They also attack Smith’s directly contrary
testimony by arguing Smith presented no “collaborating [sic] witnesses, no
documents or writings of any kind to establish any facts; nothing other than
the testimony of [Smith] himself to prove that he had not consented to the
repairs to his truck.”  The trial court,
in the judgment, recited the finding that Smith had established all the
elements of his conversion claim. 
Therefore, the trial court implicitly found that Smith did not consent
to Len making the repairs to the truck in exchange for payment.  As the sole judge of the credibility of the
witnesses, the trial court could have believed Smith’s testimony and
disbelieved the testimony of Len and his friend.  See Dyer, 333 S.W.3d at 709.  We must defer to that determination.  See
C.M. Asfahl Agency, 135 S.W.3d at 797.

          We overrule
the sole issue.

Conclusion

          We
affirm the judgment of the trial court.

 

 

 

 

                                                                   Rebeca
Huddle

                                                                    Justice


 

Panel consists of Chief
Justice Radack and Justices Bland and Huddle.