# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-09-00457-CV

---

**Yong Zhang, Appellant**

**v.**

**Med-Towel Enterprises, Ltd., Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
NO. D-1-GN-06-002110, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Yong Zhang appeals the trial court's order denying his special appearance. He contends that the trial court failed to make a necessary finding that he purposefully availed himself of the benefits and protections of Texas law, that the evidence does not support express or implied findings that he availed himself of those benefits or that he had minimum contacts with Texas, and that the trial court erred by concluding that it had personal jurisdiction over him. We affirm the order denying Zhang's special appearance.

Med-Towel, a Texas partnership, designed and attempted to sell and distribute x-ray detectible surgical towels. Med-Towel sought to have the towels manufactured by Guangda Textile Company, an Illinois corporation with operations in China. The initial overture regarding this transaction was made by Garrett Bolks, an Oklahoma resident, on behalf of All-Med Industries, L.P., a Texas limited partnership, who called Yong Zhang, an Illinois resident. Med-Towel alleged

that it eventually had direct communications with Zhang. Med-Towel also alleged that Zhang made representations on behalf of Guangda and U-Ten Corporation, another Illinois corporation. Ultimately, Med-Towel ordered towels through Zhang and paid for them, although Zhang averred that the transaction was between All-Med and Guangda. Some of the towels shipped were returned as substandard and, according to Med-Towel, were not replaced by U-Ten or Guangda. Med-Towel also alleged that U-Ten and Guangda tried to sell surgical towels directly to customers, thereby competing with Med-Towel, while withholding the replacement towels so that Med-Towel had no inventory to sell.

Med-Towel sued Zhang, U-Ten, Guangda, and others for various causes of action. Med-Towel sued Zhang for fraud, contending that he made representations on behalf of Guangda and U-Ten that they would manufacture and supply surgical towels to Med-Towel. Med-Towel contends these representations were false and relied on by Med-Towel to its detriment. Med-Towel also asserts that Zhang demanded prepayment for towels not supplied, failed to return the prepayment, and restricted the supply of towels in order to gain a competitive advantage when selling the towels directly to Med-Towel's customers.

Zhang filed a special appearance, supported by an affidavit, asserting that he lacked the necessary minimum contacts with Texas to be subject to personal jurisdiction and that Med-Towel's claims did not arise from his contacts with Texas. He averred that he had no contracts with any parties in the case, had no interest in the transaction or the entities involved, and that he received no compensation related to the transaction. Zhang stated that he was an employee of U-Ten, not an owner, and was merely an information conduit between Guangda and All-Med—not appellee Med-

2

Towel. He asserted that he was not an owner, officer, or employee of Guangda, and that he merely translated and transmitted communications between Guangda and All-Med. Zhang stated that he never met in Texas with anyone regarding the towel transaction, and that he did not know initially that the towels were to be delivered to Texas or that the other companies were Texas companies. He admits being asked to transmit a message to Guangda that the destination of the towels was Texas and that he helped arrange to return some towels from Texas to China. He asserted that his contacts with Texas were over the telephone and by email to relay messages to China to facilitate the delivery of towels to All-Med. He asserted that he did not conduct business or solicit customers in Texas.

At the hearing on the special appearance, the trial court admitted Zhang's affidavit and heard testimony from Med-Towel's president, Mark Kyle. Although Kyle agreed that All-Med's Bolks initially contacted Guangda and Zhang, he denied that Zhang was merely a translator. Kyle testified that Bolks reported that he met with Zhang at a conference in Texas where the two discussed the products at issue, although Kyle could not remember the time of the conference or the substance of the conversations. Kyle testified that he spoke on the telephone with Zhang many times. He testified that Zhang gave him a business card stating that Zhang was a vice-president of Guangda (the card was not offered or admitted). Kyle testified that he had met Zhang in person at least twice concerning the issues in this suit, but never in Texas. Kyle testified that Zhang told him that U-Ten was Guangda's U.S. division and that Zhang had the authority to represent Guangda when discussing the manufacture of the towels with Kyle on Med-Towel's behalf. Kyle said he had no contact with Zhang's father, the owner of Guangda, before the lawsuit was filed. Kyle testified that there was an oral agreement that Med-Towel would be the exclusive distributor of these x-ray

3

detectible towels and that Guangda would not sell the towels to Med-Towel's customers. He admitted, however, that Med-Towel's written contract was with All-Med, not Zhang, U-Ten, or Guangda. He also testified that All-Med had an exclusivity agreement with Guangda regarding these towels. Kyle testified that Med-Towel wired about $200,000 to All-Med that then went to Guangda for towels that eventually arrived with bad packaging and mildew. Kyle also testified that Zhang assured him more towels were being shipped. No more towels were shipped to Med-Towel, but towels with Med-Towel's design began appearing at hospitals.

Kyle testified that Zhang assured him numerous times that Guangda was not selling to Med-Towel's customers, but he eventually learned that Zhang had added Med-Towel's x-ray detectible towels to the product mix he was selling to his own customers—some of whom were Med-Towel's existing or intended customers. Kyle testified that, when Zhang assured him on the telephone that his family's companies were not selling x-ray detectible towels, Kyle made Zhang aware that Kyle was in Texas, Zhang made the representations to him while he was using a 512 area-code phone number, and Zhang had shipped the original product to Texas. Kyle testified that he and Zhang had hundreds of telephone calls to his office and cell phones during the time that Zhang was denying that his family's companies were selling Med-Towel's x-ray detectible towels directly to Med-Towel's customers, when they were, in fact, doing so. Kyle testified that Zhang also sent hundreds of e-mails and many faxes to Kyle while Kyle was in Texas.

The trial court denied Zhang's special appearance and made findings of fact and conclusions of law in support of the denial, including the following findings:

4. Defendant negotiated the terms of the agreements between U-Ten/Guangda, on the one hand, and Plaintiff, on the other hand, with Plaintiff's president, Mark Kyle ("Kyle").

5. Defendant made hundreds of phone calls, faxes and emails to Kyle in furtherance of their negotiations and in furtherance of the fraud perpetrated on Plaintiff by U-Ten and Guangda.

. . . .

9. Defendant traveled to Texas on at least one occasion with regard to the x-ray detectable towel business with Texas residents.

10. At the same time that U-Ten and Guangda were engaging in communications directly with Plaintiff's customers, Defendant was making phone calls, faxes and emails to Plaintiff to assure Plaintiff that U-Ten and Guangda were not engaging in communications directly with Plaintiff's customers. These representations were false and were made with the purpose of misleading Plaintiff.

Zhang complains that these findings and conclusions lack the necessary determination that he purposefully availed himself of the privileges and benefits inherent in conducting business in Texas. He contends that these findings, and any implied findings in favor of the court's denial of his special appearance, are not supported by legally sufficient evidence.

Zhang contends that the trial court erred by failing to make a necessary finding that he purposefully availed himself of the benefits and protections of Texas law, that the record does not support an implied finding of purposeful availment, that legally sufficient evidence does not support the other jurisdictional fact findings, that he did not have minimum contacts with Texas sufficient to satisfy due process, and that the trial court erred by concluding that it had personal jurisdiction over him.

A nonresident defendant is subject to the personal jurisdiction of Texas courts if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction does not violate federal and state constitutional due process guarantees. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990). Texas's long-arm statute extends the trial court's jurisdiction "as far as the federal constitutional requirements of due process will allow." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). Personal jurisdiction is consistent with due process "when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant establishes minimum contacts with a state when it purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). To constitute purposeful availment, the contacts must be (1) the action of the defendant, not a third party, (2) purposeful, rather than random, fortuitous, or attenuated, and (3) must show the defendant seeking a benefit, advantage, or profit from availing itself of the jurisdiction. *Moki Mac*, 221 S.W.3d at 575. The contact must be such that the person making them would reasonably expect to be haled into Texas courts. *See MedCost, L.L.C. v. Loiseau*, 166 S.W.3d 421, 429 n.9 (Tex. App.—Austin 2005, no pet.) (citing *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002)). Only in rare cases will a Texas court's exercise of personal jurisdiction not comport with fair play and substantial justice

if the nonresident defendant has purposefully established minimum contacts with Texas. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991).

Specific jurisdiction arises when (1) the defendant purposefully avails itself of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities. *Retamco*, 278 S.W.3d at 338. When reviewing specific jurisdiction, we focus on the relationship among the defendant, the forum, and the litigation. *Moki Mac*, 221 S.W.2d at 575-76.

The plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute. *Id.* at 574. The defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Id.*

Whether a court can exercise personal jurisdiction over nonresident defendants is a question of law, and thus we review de novo the trial court's determination of a special appearance. *Id.* In determining jurisdictional pleas asserted by a defendant, we construe the pleadings liberally in the plaintiff's favor. *Texas Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002). In making a jurisdictional determination, the trial court must frequently resolve underlying factual disputes. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Huynh v. Nguyen*, 180 S.W.3d 608, 615 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We may not disturb a trial court's resolution of evidentiary conflicts that turn on credibility determinations or the

7

weight of the evidence. *Ashdon, Inc. v. Gary Brown & Assocs., Inc.*, 260 S.W.3d 101, 116 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Ennis v. Loiseau*, 164 S.W.3d 698, 706 (Tex. App.—Austin 2005, no pet.). If the trial court issues findings of fact and conclusions of law, we may review the fact findings for both legal and factual sufficiency. *BMC*, 83 S.W.3d at 794. A legal sufficiency challenge to a finding of fact fails if there is more than a scintilla of evidence to support the finding. *Id.* at 795. If one or more elements of a ground of recovery or defense are found by the trial court, but others are omitted, the omitted findings will be supplied by presumption in support of the judgment if they are supported by evidence. Tex. R. Civ. P. 299.

The failure of the trial court in this case to expressly find purposeful availment does not render its order denying the special appearance erroneous. Purposeful availment is not a ground of recovery or a defense, but is an element of the test for whether the exercise of personal jurisdiction is proper. *Cf. Retamco*, 278 S.W.3d at 338-39. Accordingly, if jurisdiction is found and other elements of the jurisdictional test are found, a finding of purposeful availment can be presumed. *See* Tex. R. Civ. P. 299. The trial court determined that Zhang made hundreds of communications to Med-Towel in furtherance of the negotiations to do business and the alleged fraud designed to take business away from Med-Towel, and concluded that Med-Towel's causes of action arose from Zhang's contacts with Texas, that the exercise of personal jurisdiction over Zhang would not offend notions of fair play and substantial justice, and that the trial court has personal jurisdiction over Zhang. The absence of an express purposeful availment finding does not render the order erroneous so long as sufficient evidence supports a finding of purposeful availment.

8

Legally sufficient evidence supports a finding that Zhang purposefully availed himself of the privileges and benefits inherent in conducting business in Texas. Although the first contact with Zhang related to the underlying transaction was initiated by Oklahoma resident and All-Med representative Bolks toward Zhang in Illinois, Med-Towel's president Kyle testified that Zhang purposefully initiated hundreds of telephone calls and other communications to him when Zhang knew Kyle was in Texas.[1] Kyle also testified that Bolks reported that he and Zhang discussed the transaction in Dallas while at a conference. Based on Zhang's representations, Med-Towel sent money to All-Med, which sent money to Guangda, a company for which Zhang was allegedly an officer. Kyle's testimony provides evidence that Zhang intentionally initiated numerous contacts with Med-Towel through Kyle in Texas, that the contacts were intended to induce certain actions and inactions by Med-Towel, that Zhang arranged for delivery of towels to Texas and their

---

[1] The fact that Kyle's testimony on this subject was not supported by telephone records or other documentation does not render it inadmissible or weightless. Sworn testimony that, while in Texas, he received "hundreds" of telephone calls from Zhang ("numerous" times initiated by Zhang to a 512 office number and cell phone), "hundreds" of emails from Zhang, and "many" faxes from Zhang is some evidence that these communications occurred as described. The fact that this testimony was disputed or minimized by Zhang does not render the evidence weightless.

The advent of cell phones and call forwarding has diminished the weight that testimony regarding the area code of the recipient lends to a contention that a phone call was made to a particular site. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791 (Tex. 2005) ("[C]hanges in technology have made reliance on phone calls obsolete as proof of purposeful availment."). However, the evidence in this case was not limited to telephone calls. Kyle testified that he was located in Texas when Zhang made fraudulent representations to him on the phone, that he told Zhang he was in Texas, and that Zhang knew he was in Texas. Although specific jurisdiction is not necessarily established by allegations or evidence that a nonresident committed a tort in a telephone call from Texas, *see id.* at 791-92, we conclude that additional evidence regarding the initiator of the call, the location of the recipient, and the knowledge of the caller regarding the recipient's location are relevant in establishing jurisdiction.

return from Texas to China, and that the communications were made to conduct business in Texas for Zhang's benefit. Although Zhang denies that he had any role in Guangda or received any profit for his role in these transactions, the trial court could reasonably choose to credit Kyle's testimony that Zhang represented that he is a vice president of Guangda and an authorized representative of U-Ten. This evidence, combined with the evidence of hundreds of communications directed by Zhang to Kyle in Texas, constitutes more than a scintilla of evidence to support the trial court's presumed inference that Zhang sought a benefit or advantage by making the representations to Kyle in Texas as alleged.

Kyle's testimony provides more than the single, discrete contact initiated by the plaintiff in *Michiana*. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). In that case, the plaintiff/buyer initiated contact with a recreational vehicle manufacturer that otherwise did not do business in Texas. *Id.* The single phone call in *Michiana* resulted in a one-time sale to a single individual and did not constitute purposeful availment of the benefits of Texas law by the manufacturer. *Id.* Here, by contrast, there is evidence of hundreds of communications, many initiated by Zhang, concerning hundreds of towels in a transaction that persisted longer than a single purchase. Kyle's testimony provides more than a scintilla of evidence to support the implied finding that Zhang purposefully availed himself of the benefits and protections of Texas law while working for the interests of U-Ten and Guangda. The record contains legally sufficient evidence to support a finding that Zhang established contacts with Texas that would cause him to reasonably expect to be haled into Texas courts. The evidence is legally sufficient to support

10

findings that Zhang purposefully availed himself of the benefits of Texas and that he had the necessary minimum contacts with Texas.

Kyle's testimony also supports a finding that Med-Towel's claim against Zhang arises from his contacts with Texas. Although he did not testify regarding specific representations made during specific communications, Kyle testified that his only contact with Zhang relating to the towel transaction was by telephone, e-mail, or fax to Texas, that Zhang made misrepresentations during these communications, and that Med-Towel relied on these communications and was damaged thereby. The trial court's conclusion that Med-Towel's causes of action arise from and are related to Zhang's contacts with Texas is supported by legally sufficient evidence. Similarly, we conclude that Zhang has not demonstrated error in the trial court's conclusion that the exercise of personal jurisdiction over Zhang will not offend notions of fair play and substantial justice.

We conclude that legally sufficient evidence supports a presumed finding that Zhang purposefully availed himself of the benefits and protections of Texas law as well as all other findings necessary (including the existence of minimum contacts) to support the conclusion that the trial court can properly exercise personal jurisdiction over Zhang in this case.

We affirm the order denying Zhang's special appearance.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed: April 8, 2010

11